Opinion filed December 14, 2017



In The

# Eleventh Court of Appeals

_____

## Nos. 11-16-00234-CR & 11-16-00235-CR

_____

## WILLIAM ELLIS SHIMP, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 90th District Court**
**Stephens County, Texas**
**Trial Court Cause Nos. F34848 & F34849**

### M E M O R A N D U M   O P I N I O N

The jury convicted William Ellis Shimp of the offense of prostitution—solicitation of a person under 18 years of age, and it also convicted him of the offense of indecency with a child by exposure. Appellant pleaded true to two enhancements, including a prior conviction for indecency with a child by contact. The jury assessed punishment at confinement for life for the prostitution offense and at confinement for twenty years and a $10,000 fine for the indecency offense. We affirm.

Appellant presents three issues for our review.[1] In his first issue, Appellant argues that the trial court violated his Sixth Amendment right to confrontation when it refused to allow him to cross-examine the complainant or to make a record regarding her prior sexual misconduct. Appellant argues in his second issue that the trial court erred when it denied his challenges for cause and his request for an additional peremptory strike during voir dire. In his final issue, Appellant asserts that the trial court erred when it allowed the jury to hear testimony that Appellant had committed a prior sexual assault.

At the time of the alleged offense, complainant J.D. was fifteen years old and living "off and on" with her thirteen-year-old boyfriend, Z.B., at "Granny's" house in Cisco. Granny was Z.B.'s grandmother, and she suffered from Alzheimer's. J.D. was at Granny's house when she met Appellant.

Appellant invited J.D. and Z.B. to come to "his place out in the country" to ride four-wheelers. It is unclear whether J.D. and Z.B. told Granny that they were going to Appellant's house, and Granny did not remember the children telling her that they were leaving. Although Granny had a home phone, J.D. did not telephone her mother about going to Appellant's house.

---

[1]Appellant styles his brief as raising six issues: (I) that the court abused its discretion by refusing to allow cross-examination of J.D. regarding prior sexual misconduct; (II) that the court abused its discretion when it refused to allow Appellant to make a record of J.D.'s testimony, outside the presence of the jury, about whether she had engaged in prior sexual misconduct; (III) that the court effectively denied Appellant his right of confrontation by refusing to allow cross-examination of J.D. regarding prior sexual misconduct; (IV) that the court erred when it denied Appellant's challenge for cause to a potential juror and refused to grant him a requested peremptory strike; (V) that the testimony supporting evidence of an extraneous offense was not sufficient to support a jury finding that, beyond a reasonable doubt, Appellant committed the separate offense; and (VI) that the court erred in admitting the extraneous offense because its prejudicial effect outweighed its probative value. Because the parties treat Issues I-III and V-VI as related, so do we. We treat Issues I-III as the "first issue," Issue IV as the "second issue," and Issues V-VI as the "third issue."

2

Appellant drove J.D. and Z.B. to his house in Moran. The three rode four-wheelers, and J.D. and Z.B. swam in Appellant's stock pond. Once it got dark, J.D., Z.B., and Appellant returned to Appellant's house.

After J.D. and Z.B. showered and got dressed, they sat in Appellant's living room, watched television, and Z.B. played on Appellant's computer. Appellant began to complain about his back hurting. Appellant offered J.D. $60 to rub his back. J.D. testified that she accepted Appellant's offer because it was "just a back rub." She and Appellant went into Appellant's bedroom and closed the door. Z.B. stayed in the living room and watched television.

J.D. testified that, when she and Appellant went to the bedroom, Appellant was wearing a T-shirt and blue jeans. However, when J.D. began to give Appellant a massage, he took off his blue jeans. He had no underwear on, and he lay facedown on the bed.

As J.D. massaged Appellant, he told J.D. that he would give her an iPhone if she had sex with him. J.D. declined. Appellant rolled over, exposing his genitalia to J.D., and said, "[I]t feels good when you play with my b---s and tickle my d--k." J.D. complied for a "short time," because she was scared. Appellant showed her where to touch him.

Afterwards, Appellant gave J.D. $60, and J.D. went back into the living room with Z.B. Z.B. testified that Appellant walked out of the bedroom shortly thereafter, wearing only shorts.[2]

J.D. did not tell Z.B. about what happened in the bedroom. However, Z.B. testified that J.D.'s "mood chang[ed]" after she came back from Appellant's bedroom. J.D. "kept staring" at the bedroom door, and she wrapped her arms around her legs, covering the bottom half of her face.

---

[2]On cross-examination, Appellant elicited that, in a prior interview, Z.B. gave a contradictory report that Appellant was wearing "jeans and no shirt."

J.D. and Z.B. stayed the night at Appellant's house, where they slept on couches in the living room. Around 7:00 or 8:00 the following morning, Appellant drove them back to Granny's house. When J.D. and Z.B. got to Granny's, they learned that an Amber Alert had been issued for each of them. J.D. "received some punishment" for going to Appellant's house without permission.

While J.D. and Z.B. were at Appellant's house, Granny called J.D.'s mother, D.J.B., and said that she could not find the children. D.J.B. went out to look for J.D. and Z.B., but after an hour had passed, she called 9-1-1 and reported them missing. D.J.B. did not hear from J.D. until J.D. and Z.B. got back to Granny's house the following morning. After D.J.B. spoke with J.D. about what happened at Appellant's house, she reported it to the police.

Benjamin Wayne Yarbrough, a deputy with the Eastland County Sheriff's Department, received D.J.B.'s report. Deputy Yarbrough phoned Appellant and asked him about the allegations that J.D. had made against him. When Deputy Yarbrough asked Appellant about the indecency with a child allegation, Appellant admitted that he had received a massage from J.D. When Deputy Yarbrough asked Appellant about it being a nude massage, Appellant said, "Well, I had on a towel."

Appellant had a prior conviction for indecency with a child by contact.[3] Therefore, Deputy Yarbrough also advised Appellant that "he was in violation of his sexual offender status."

Appellant did not testify at trial. Throughout voir dire, Appellant posed questions regarding teenagers' propensities to lie. During closing argument, Appellant offered the theory that J.D. fabricated the allegations. To support this

---

[3]Appellant pleaded guilty to indecency with a child by contact in 1994 in Shackelford County; he was sentenced to confinement for fifteen years. The sex offender registry states that the victim was nine years old. The State introduced, as an exhibit, a certified copy of Appellant's judgment for that conviction.

theory, Appellant cited J.D.'s mental health problems and failure to treat them—cross-examination revealed that J.D. suffered from bipolar disorder but did not always take her prescribed medication; her tendency to fight with her family and school officials—J.D. was staying at Granny's due to family "trouble" and had been kicked out of school; and her history of running away and shoplifting.

Appellant sought also to support the theory of fabrication with allegations that J.D. was engaged in sexual misconduct with Z.B. around the time of the alleged offense. However, in a hearing outside the presence of the jury, the trial court refused to allow Appellant to cross-examine J.D. on this matter or to make a record of her testimony. In his first issue, Appellant maintains that the trial court abused its discretion and violated his Sixth Amendment right to confrontation when it refused his requests.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). We must uphold the trial court's ruling if it was correct on any theory of law applicable to the case. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009). We will reverse a trial court's ruling only if it is outside the "zone of reasonable disagreement." *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010).

The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The primary purpose of the right to confrontation is to grant the defendant an opportunity to test the believability of a witness and the truth of his testimony. *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974); *Johnson v. State*, 490 S.W.3d 895, 909 (Tex. Crim. App. 2016). Therefore, "[a] defendant is entitled to pursue all avenues of cross-examination reasonably calculated to expose a motive, bias or interest for the witness

to testify." *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996) (citing *Lewis v. State*, 815 S.W.2d 560, 565 (Tex. Crim. App. 1991)).

Nevertheless, trial courts retain "'wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination,' so long as those limits do not operate to infringe upon the Confrontation Clause's guarantee of 'an opportunity for effective cross-examination.'" *Johnson v. State*, 433 S.W.3d 546, 551–52 (Tex. Crim. App. 2014) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). The Constitution "could be offended if a state evidentiary rule prohibited the defendant from cross-examining a witness concerning possible motives . . . to such an extent he could not present a vital defensive theory." *Johnson*, 490 S.W.3d at 910.

However, the trial court does not abuse its discretion when it limits a defendant's cross-examination when the defendant fails to establish a "causal connection" or "logical relationship" between the sought-after testimony and a defensive theory. *Irby v. State*, 327 S.W.3d 138, 145 (Tex. Crim. App. 2010). "This is because a defendant who cannot persuasively establish this connection has essentially failed to demonstrate that the evidence he seeks to introduce . . . *is* relevant . . . ." *Johnson*, 433 S.W.3d at 552; *see Irby*, 327 S.W.3d at 149.

Citing *Irby*, the trial court ruled that Appellant failed to show a causal connection between J.D.'s sexual misconduct and her potential motive to falsely testify; therefore, evidence of J.D.'s sexual misconduct was not admissible. We agree.

Appellant argues that the Court of Criminal Appeals' recent ruling in *Johnson*[4] makes *Irby* distinguishable in cases "where the defense seeks to admit evidence of past sexual behavior, not for impeachment generally of the

---

[4] 490 S.W.3d at 913.

witness's credibility or to show the witness was a bad person, but to show that the complaining witness has a strong motive for fabricating a story to deflect from the witness's own misconduct."

This is an overly broad reading of *Johnson*'s treatment of *Irby*. Appellant's argument more closely echoes the rejected position that "mere status is always automatically relevant to show a witness's possible bias and motive." *Irby*, 327 S.W.3d at 152.

In *Johnson*, the court faced two questions that pertained to the admissibility of evidence regarding the complainant's past sexual history: (1) a juvenile adjudication for child molestation and (2) evidence that the juvenile had received counseling that his parents had arranged when they discovered that he had been sexually molesting his younger sister. 490 S.W.3d at 913. The juvenile adjudication occurred after the complainant's outcry occurred, but the complainant's parents put him in counseling before the outcry occurred. *Id.*

The Court of Criminal Appeals acknowledged that there was "no evidence of any link between the State's decision *to charge Johnson* with the sexual abuse of [the complainant], and the State's decision to *charge [the complainant]* with the sexual abuse of his sister." *Johnson*, 490 S.W.3d at 913. However, evidence of the complainant's past sexual behavior and resultant counseling showed that the complainant had "a strong motive" "at the time he made the outcry" to fabricate his allegations against Johnson, "so that he would appear sympathetic to his parents as a victim of sexual assault, rather than as a perpetrator of sexual assault." *Id.* at 913–15. Therefore, the Court of Criminal Appeals determined that the trial court erred when it did not permit Johnson to cross-examine the complainant regarding his counseling and past sexual abuse of his sister. *Id.* at 915. In other words, *Johnson* simply applied *Irby*'s "causal connection" requirement to distinguish the

complainant's adjudication and counseling; contrary to Appellant's argument, it did not overrule *Irby* or alter its applicability. *See id.* at 913–14.

Thus, even after *Johnson*, a proponent of evidence must show that there is a causal connection between the evidence and the witness's potential bias. Appellant argued that, if J.D. were engaged in sexual misconduct at the time of the offense, it would show a motive to fabricate the allegations. The trial court repeatedly asked Appellant to explain the causal connection between the alleged misconduct and her potential motive. Appellant alluded to *Johnson*, where the complainant seemed to understand what type of trouble the accused would face for sexual misconduct, because the complainant had been in that situation himself. Appellant opined that "anything that is relevant to [the] ability to fabricate has to be explored," including "what motivation she could possibly have for making a false allegation."

In response, the trial court refused to allow, at that time, Appellant to make a record of J.D.'s testimony that concerned her sexual misconduct. But it stated that it would allow Appellant to question D.J.B. on the matter and "see if that [led] to anything else."

Nothing in the entirety of the record reflects that J.D. was ever punished for "sexual misconduct." *Cf. Johnson*, 490 S.W.3d at 902 (finding complainant's father discovered he was having sexual contact with his sister sometime before the outcry and put complainant in counseling). In fact, there is no evidence that J.D. was engaged in sexual misconduct with Z.B. at all; when asked if he and J.D. were sexually active at the time of the alleged offense, Z.B. replied, "No."

The trial court gave Appellant the opportunity to develop the relevance of the requested confrontation evidence through two other witnesses; he did not. Absent evidence that J.D. was punished for—let alone, actually engaged in—the alleged sexual misconduct, this case is distinct from *Johnson*. We, too, find that Appellant has not shown a causal connection between J.D.'s alleged sexual misconduct and

8

her potential motive to fabricate allegations against Appellant. Thus, the trial court did not abuse its discretion or violate Appellant's right to confrontation by excluding this evidence. For this reason, we overrule Appellant's first issue.

In Appellant's third issue, he asserts that the trial court abused its discretion when it admitted testimony regarding an extraneous offense. First, Appellant contends that the testimony was not adequate to support a jury finding beyond a reasonable doubt that Appellant committed the extraneous offense. In the alternative, Appellant argues that the probative value of the testimony was substantially outweighed by the danger of unfair prejudice.

Prior to trial, the State provided notice that it intended to elicit extraneous-act testimony from D.J.B. Specifically, D.J.B. claimed that Appellant had touched her breast as she was giving him a massage in 1992, when she was approximately ten or eleven years old.

Ordinarily, evidence of a "crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX. R. EVID. 404(b)(1). Prior bad acts are admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(2). However, the legislature has expressly abrogated Rule 404 in the prosecution of certain crimes, including indecency with a child. TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b) (West Supp. 2017). Article 38.37 allows such evidence to show the "character of the defendant and acts performed in conformity with the character of the defendant." *Id.*

The jury may hear extraneous offense evidence only after the trial court conducts a hearing outside the presence of the jury to "determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt." *Id.* § 2-a. In

9

accordance with this procedure, the State questioned D.J.B. outside the presence of the jury.

During the hearing, D.J.B. testified that she went to elementary school in Moran. While she lived there, she was friends with Appellant's son and daughter. D.J.B. often went to Appellant's house. The State asked D.J.B., "What, if anything, did [Appellant] do to you that was not appropriate?" D.J.B. responded: "He's touched my leg, grabbed my boob, wanted me to give him massages."

D.J.B. explained that, when she was ten or eleven years old, she wanted to go on a trip, and Appellant offered to pay her way if she gave him a massage. D.J.B. agreed and gave him a massage. At some point, Appellant started rubbing D.J.B.'s leg and asked her "to sleep with him," so she left.

The State asked to proffer before the jury that Appellant, "with the intent to arose [sic] or gratify the sexual desires of [Appellant], engaged in sexual contact with [D.J.B.], a child under the age of 17 by touching the breast of [D.J.B.]." Appellant argued that the testimony did not constitute sufficient evidence to submit the extraneous offense to the jury. Appellant also objected that, if the evidence was admissible, then its prejudicial impact outweighed its probative value in violation of Rule 403. The trial court noted that the massage was consistent with the allegations against Appellant, and it made a finding that the probative value of the testimony outweighed its prejudicial effect. It allowed the State to present the testimony before the jury.

On appeal, Appellant again challenges the sufficiency of the evidence to show that Appellant committed an offense against D.J.B. more than twenty years ago. Appellant argues that the testimony was unreliable because it came from only one witness, D.J.B. herself, and because it was contradictory. The State responds that

Appellant's relevant arguments[5] address only credibility determinations made by the trial court.

A child victim's testimony alone is sufficient to support a conviction for indecency with a child. *See* CRIM. PROC. art. 38.07. D.J.B.'s testimony specified that Appellant engaged in sexual contact with D.J.B. by touching her breast when she was ten or eleven years old. She also stated that Appellant asked her to "sleep with him," showing an intent to arouse or gratify his sexual desire. Therefore, D.J.B.'s testimony, standing alone, was sufficient to support a finding by the jury that Appellant committed the separate offense of indecency with a child beyond a reasonable doubt. *See* TEX. PENAL CODE ANN. § 21.11(a) (West Supp. 2017). The trial court acted well within the "zone of reasonable disagreement" when it admitted D.J.B.'s testimony under Article 38.37. *See Montgomery*, 810 S.W.2d at 391.

Alternatively, Appellant argues that the trial court should have excluded D.J.B.'s testimony because its prejudicial effect substantially outweighed its probative value. Appellant timely asserted his Rule 403 objections, which the trial court overruled.

Appellant correctly states that, even if evidence is admissible under Article 38.37, the trial court must also consider whether Rule 403 precludes it. *Bezerra v. State*, 485 S.W.3d 133, 140 (Tex. Crim. App. 2016). Rule 403 states, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. We will "reverse the trial court's judgment 'rarely and only after a clear abuse of discretion' because the trial court is in a superior

---

[5]Appellant also argues that the testimony does not support a jury finding beyond a reasonable doubt because the extraneous offense described has few similarities with the present allegations. Because this argument is more relevant to the probative value of the testimony, we will consider it therein.

position to gauge the impact of the relevant evidence." *Freeman v. State*, 230 S.W.3d 392, 404–05 (Tex. App.—Eastland 2007, pet. ref'd) (quoting *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999)).

To conduct a Rule 403 balancing test, Appellant points to the following non-exclusive factors: (1) the compelling probative value of the evidence; (2) the proponent's need for the extraneous transaction; (3) the potential the "other crime, wrong, or act" has to impress the jury in an irrational but indelible way; and (4) the amount of time the proponent needs to develop evidence of the extraneous misconduct. *Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996) (quoting *Montgomery*, 810 S.W.2d at 389–90).

Appellant argues that the extraneous offense is insufficiently similar to and too remote in time from the charged offense to be probative. D.J.B. testified that Appellant asked her for a massage, then rubbed her leg and touched her breast; J.D. testified that Appellant asked her for a massage, then asked her to touch and "rub" his genitalia. Even though D.J.B.'s testimony was not identical to J.D.'s allegations, it was probative to show that Appellant used a massage as a predicate to commit indecencies against children. Therefore, we disagree with Appellant's argument that the offenses were not sufficiently similar. *See Bezerra*, 485 S.W.3d at 141. Indeed, the offenses were sufficiently similar to overcome the remoteness in time between them. *See Gaytan v. State*, 331 S.W.3d 218, 226–27 (Tex. App.—Austin 2011, pet. ref'd) ("[R]emoteness is but one aspect of an offense's probativeness.").

Appellant also argues that the extraneous offense was not probative because it "neither detracted from nor added to the State's rebuttal of [Appellant's] defensive theory" of fabrication. Evidence that Appellant previously committed an act of indecency against a minor while receiving a backrub was probative of his propensity to commit the offense. Therefore, it was directly responsive to Appellant's fabrication defense. Article 38.37 expressly makes extraneous offenses admissible

12

for purposes of showing propensity in sexual offenses. *Harris v. State*, 475 S.W.3d 395, 402 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd).

Furthermore, the Court of Criminal Appeals has stated that "[a] defendant having committed the same crime for which he is charged is inherently probative." *Bezerra*, 485 S.W.3d at 141. "As such, the inherent probative value of the evidence is a proper factor for the trial court to consider when conducting a Rule 403 balancing test." *Id.* For these reasons, the trial court did not abuse its discretion when it determined that the extraneous offense was probative.

Appellant's defensive theory strengthened the State's need for the extraneous evidence. In its closing argument, Appellant emphasized his theory that J.D. fabricated the allegations against him, and he cited her mental health history and prior shoplifting convictions. Absent D.J.B.'s testimony, "the State's case would have basically come down" to J.D.'s word against Appellant's. *Gaytan*, 331 S.W.3d at 227. Thus, the second factor weighs toward admission of the extraneous offense under Rule 403.

Appellant next argues that, even if the testimony was probative, it impressed the jury in "an irrational but indelible way simply because sexual contact or assault of a child is so abhorrent." However, the extraneous indecency offense was no more inflammatory than the indecency and solicitation charged in the indictment. It was also less inflammatory than the admitted evidence of Appellant's prior conviction for indecency with a child by contact, which Appellant committed against a nine-year-old girl, and for which he was sentenced to fifteen years in prison. Together, the charged offense and Appellant's prior conviction lessened the extraneous offense's potential inflammatory or irrational effect. *See Robisheaux v. State*, 483 S.W.3d 205, 220 (Tex. App.—Austin 2016, pet. ref'd) (explaining that the extraneous offense's inflammatory effect is ameliorated when it is no more serious

13

than the charges alleged). Therefore, the weight of this factor does not overcome the probative value of the extraneous offense.

Finally, Appellant contends that the State was allowed too much time to develop D.J.B.'s testimony. However, in making this argument, Appellant considers testimony given both before and outside the presence of the jury. "[T]he potential for unfair prejudice occurs if the State spends an undue amount of time presenting the extraneous offense *to* the jury." *Dennis v. State*, 178 S.W.3d 172, 181 n.2 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (emphasis added); *see State v. Mechler*, 153 S.W.3d 435, 441 (Tex. Crim. App. 2005) (explaining the potential for unfair prejudice when too much time is spent "develop[ing] the evidence, during which the jury [is] distracted from consideration of the indicted offense). Consequently, our analysis does not include hearings outside the jury's presence. *Dennis*, 178 S.W.3d at 181 n.2; *see Newton v. State*, 301 S.W.3d 315, 321 (Tex. App.—Waco 2009, pet. ref'd). Over the course of a three-day jury trial, which developed approximately 500 pages of record, the direct examination, cross-examination, and redirect of D.J.B. on the relevant extraneous offense consumed only ten pages. We do not find that ten pages of examination in a trial of this scale constitutes undue delay. For this reason, the final factor also weighs in favor of admission.

Because each of the Rule 403 factors points toward the admission of the extraneous offense, we find that the trial court did not clearly abuse its discretion when it allowed the jury to hear D.J.B.'s testimony.

Even if it was error to admit the extraneous offense testimony, any error was harmless. "The erroneous admission of extraneous-offense evidence constitutes non-constitutional error." *Pittman v. State*, 321 S.W.3d 565, 572 (Tex. App.—Houston [14th Dist.] 2010, no pet.). We must disregard a nonconstitutional error if it does not affect substantial rights. "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the

14

jury's verdict." *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014). "[S]ubstantial rights are not affected by the erroneous admission of evidence 'if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect.'" *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (quoting *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001)). In assessing the likelihood that the jury's decision was adversely affected by the error, we must "consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Id.*

First, as stated above, the extraneous offense alleged by D.J.B. was no more inflammatory than evidence of Appellant's prior conviction for indecency with a child who was nine years old at the time of the offense. Furthermore, the State presented ample evidence of Appellant's guilt. In addition to J.D.'s testimony, Z.B. testified that J.D.'s mood "changed" immediately after she left Appellant's room. Z.B.'s mother testified that Appellant called and asked her to convince Z.B. "to lie for [Appellant]; to say that [Z.B.] had walked through the bedroom to the bathroom" during the massage and that Appellant was wearing clothes. In fact, the record contains evidence that Z.B. never left the living room while J.D. and Appellant were in the bedroom. A police officer testified that Appellant admitted to him that he received a backrub from J.D. and that he wore only a towel at the time. Accordingly, when we review the record as a whole, we conclude that any error in the admission of the testimony that Appellant touched D.J.B.'s breast while receiving a massage from her did not influence the jury or had but a slight effect. Appellant's substantial rights were not affected by the admission of such testimony. Appellant's third issue is overruled.

15

Lastly, in his second issue, Appellant argues that the trial court erred when it denied his challenge for cause against two potential jurors, Veniremember Nos. 17 and 36.[6]

To preserve error for a trial court's erroneous denial of a challenge for cause, Appellant must show that he asserted a clear and specific challenge for cause, that he used a peremptory challenge on the complained-of veniremember, that his peremptory challenges were exhausted, that his request for additional strikes was denied, and that an objectionable juror sat on the jury. *Green v. State*, 934 S.W.2d 92, 105 (Tex. Crim. App. 1996). "Preservation of error is not merely a technical procedural matter by which appellate courts seek to overrule points of error in a cursory manner. Fairness to all parties requires a party to advance his complaints at a time when there is an opportunity to respond or cure them." *Loredo v. State*, 159 S.W.3d 920, 923 (Tex. Crim. App. 2004).

After a recess during which each side made their peremptory strikes, Appellant's counsel requested an additional peremptory strike:

> [DEFENSE COUNSEL]: Yes, Your Honor. I would like to request an additional strike or for the Court to reconsider my challenge for cause on Juror No. 36. As the Court might recall, the Court denied the defendant's challenge for cause. As a result, the defendant had to use one of its peremptory strikes on Juror No. 36. Had my challenge for cause been sustained, I would have been able to use that on another unacceptable juror, being No. 12.
>
> I'd request an additional strike and I'd request a ruling.
>
> THE COURT: All right. That will be denied.

Appellant stated that he used a peremptory strike on Veniremember No. 36; he made no mention of Veniremember No. 17. Moreover, he requested only a single additional peremptory strike. Therefore, Appellant failed to preserve error for the

---

[6]Appellant's brief refers to Veniremember No. 35 throughout. However, Appellant's arguments and record references indicate that his challenge is actually to the trial court's decision with respect to Veniremember No. 36.

16

trial court's denial of a challenge for cause against Veniremember No. 17. We will consider only whether the trial court erred in denying the challenge for cause against Veniremember No. 36.

During Appellant's voir dire, Veniremember No. 36 opined, "I would be hard pressed to take the word of an adult over a child in a sexual matter." The trial court later questioned Veniremember No. 36 separately:

> THE COURT: Well, ma'am, do you have the ability to evaluate and look at evidence no matter what the age of the victim is, whether she's four or 14 or 25 or whatever, and make your decision -- and I don't know what the age of a child is.
>
> [VENIREMEMBER NO. 36]: I don't either.
>
> THE COURT: -- but make the your [sic] decision based solely on what you hear in this courtroom and the credibility of that witness in that stand up there and hold the state to the burden beyond a reasonable doubt?
>
> [VENIREMEMBER NO. 36]: Yes, sir.
>
> THE COURT: And keep [Appellant] innocent until proven guilty, having the presumption of innocence?
>
> [VENIREMEMBER NO. 36]: Yes, sir.

The trial court then allowed Appellant's counsel to further question Veniremember No. 36. Veniremember No. 36 recalled her statement during voir dire: "And I said, Well, coming all the way to this point I would be hard pressed to believe that a child would lie all the way up to this point." She further explained, "I'm not saying it won't happen. I'm just saying that this is a long procedure to get to. I mean, it's not like it happened yesterday and they just - - and the kid hasn't had a chance to mull over his decisions - - her decisions. It's her decision." Defense counsel followed up on these statements with Veniremember No. 36:

> [DEFENSE COUNSEL]: Yeah. I guess what I need to know really is if it was a case where it was a child testifying and an adult testifying, would you always believe the child?

17

[VENIREMEMBER NO. 36]: I wouldn't say that - - no.

[DEFENSE COUNSEL]: Okay. And would you require a person who is accused of a crime involving a child to prove that they did not commit the crime before you could say not guilty?

[VENIREMEMBER NO. 36]: Well, in this situation that's not one of the burdens. The burden is on them.

[DEFENSE COUNSEL]: Right.

[VENIREMEMBER NO. 36]: So that doesn't play a part of it.

[DEFENSE COUNSEL]: Okay. So as far as evaluating a child witness and an adult witness, you use the same process?

[VENIREMEMBER NO. 36]: Yes.

[DEFENSE COUNSEL]: We don't give one a different standard or a greater level of credibility just because they're a child?

[VENIREMEMBER NO. 36]: No, I would not.

Later, Veniremember No. 36 repeated to Appellant's counsel, "[L]ike I said, I'd be hard pressed to think that a child that had gone through all of this would just be continually lying about something." However, when Appellant's counsel asked, "[C]an you be fair?" she responded, "I think I can be very open-minded and fair. But I've never been put in that situation, so I guess that's something you two will have to decide." The trial court immediately spoke with Veniremember No. 36 again, and the following exchange and challenges occurred:

THE COURT: I'm going to give you a guideline of what you have to follow, which is the law.

[VENIREMEMBER NO. 36]: Right.

THE COURT: And are you able to do that?

[VENIREMEMBER NO. 36]: Yeah. I don't have a problem with following the law.

THE COURT: All right. Any challenges?

[DEFENSE COUNSEL]: Defendant challenges.

[PROSECUTOR]: I would object, Judge.

18

THE COURT: Yeah.  I'm going to have you come back.  I'm going to deny it.

We review a trial court's ruling on a challenge for cause with considerable deference because the trial court is in the best position to evaluate a venireperson's demeanor and responses.  *Gardner v. State*, 306 S.W.3d 274, 295–96 (Tex. Crim. App. 2009).  When a venireperson's answers are vacillating, unclear, or contradictory, we accord particular deference to the trial court's decision.  *Id.* at 296.  We reverse a trial court's ruling on a challenge for cause only if a clear abuse of discretion is evident.  *Id.*

When we review a court's decision to grant or deny a challenge for cause, we look at the entire record to determine whether there is sufficient evidence to support the trial court's ruling.  *Feldman v.  State*, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002).  Before venirepersons may be excused for cause, the law must be explained to them, and they must be asked whether they can follow that law regardless of their personal views.  *Gardner*, 306 S.W.3d at 295.  The proponent of a challenge for cause has the burden to establish that the challenge is proper.  *Id.* The proponent does not meet this burden until the proponent shows that the venireperson understood the requirements of the law and could not overcome his prejudice well enough to follow the law.  *Id.*

The State argues that Appellant failed to preserve error because he simply stated, "Defendant challenges."  *See Green*, 934 S.W.2d at 105.  Assuming without holding that Appellant preserved the issue for review, we hold that Veniremember No. 36's answers on voir dire indicate that the trial court acted within its discretion when it denied the challenge for cause.

The record does show that Veniremember No. 36 stated a potential bias. However, after the trial court explained the law to Veniremember No. 36, she unequivocally stated that she could follow it.  Veniremember No. 36's exchange

19

with defense counsel showed not only that she understood the law, but that she would follow the law regardless of her personal views. For these reasons, Appellant failed to meet his burden to show that Veniremember No. 36 "had a bias or prejudice that would have substantially impaired her ability to carry out her oath and instructions in accordance with the law." *Davis v. State*, 329 S.W.3d 798, 808 (Tex. Crim. App. 2010).

At most, Veniremember No. 36's answers were "vacillating, unclear, or contradictory." *See Gardner*, 306 S.W.3d at 296. We are required to defer to the trial court's ruling in that exact situation. *Id.* We hold that the trial court did not abuse its discretion when it denied Appellant's challenge for cause of Veniremember No. 36. Appellant's second issue is overruled.

We affirm the judgments of the trial court.

JIM R. WRIGHT
CHIEF JUSTICE

December 14, 2017

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.