**Opinion issued July 26, 2018**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-17-00534-CR

———————————

## DEREK DALE PORTER, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 207th District Court
Comal County, Texas
Trial Court Case No. CR2016-233**

---

## MEMORANDUM OPINION

This is a family violence case.[1] Derek Dale Porter was convicted of felony

assault of his ex-girlfriend, the complainant, Georganne Shirley, and sentenced to

---

[1]     The Texas Supreme Court transferred this appeal from the Court of Appeals for
        the Third District of Texas. Misc. Docket No. 17-9066 (Tex. June 20, 2017); *see*
        TEX. GOV'T CODE § 73.001 (authorizing transfer of cases). We are unaware of any

15 years' confinement. *See* TEX. PENAL CODE §§ 12.42(a), 22.01(a), (b)(2); TEX. FAM. CODE § 71.0021(b).

Porter raises eight issues. In his first issue, Porter contends that the trial court abused its discretion in limiting his cross-examination of Shirley. In his second, third, fourth, fifth, sixth, seventh, and eighth issues, Porter contends that he received ineffective assistance of counsel. Porter has filed a motion to abate the appeal and remand the case to the trial court so he can develop the record and file an out-of-time motion for new trial based on the allegedly ineffective assistance he received during trial.

We deny Porter's motion, overrule his eight issues, and affirm the trial court's judgment.

## Background

This is a "he said, she said" family violence case. Around 2012, Shirley met Porter, and they began dating. Their relationship ended in late 2015, but it did not end on good terms. After the breakup, Shirley obtained a protective order enjoining Porter from contacting her, and she moved in with a friend, Gerard Nance.

One day, shortly after the protective order expired, Porter arrived at Nance and Shirley's house unannounced. It was cold and raining outside. The parties disagree as to how Shirley reacted. Shirley testified that she told Porter that he had

conflict between precedent of that court and this court on any relevant issue. *See* TEX. R. APP. P. 41.3.

2

to leave but that he let himself in anyway. Porter testified that Shirley told him that he could come inside and get some rest.

Porter went straight to Shirley's bedroom and fell asleep. Once Porter was asleep, Shirley spoke with Nance. Nance suggested that they just let Porter sleep through the night and ask him to leave in the morning. That evening, Shirley slept in the living room.

The next morning, while Porter was still lying in bed, Shirley went into her bedroom to wake him up. The parties dispute what happened next.

According to Shirley, she laid down next to Porter and told him that he had to leave. At first, Porter ignored her. But when Shirley told him for a second time that he had to leave, Porter grabbed her by the hair and started punching her in the side of her head. As he continued to punch her, he dragged her off the bed, out of the bedroom, and into the hallway. Shirley screamed for Nance to call the police. Porter then placed Shirley in a chokehold, and she bit him in self-defense. Shirley testified that the altercation ended when Nance came out of his bedroom and told them to cut it out. Porter let Shirley go, and Shirley hid behind Nance, crying.

Shirley testified that Nance then told Porter that he had to leave and that he was going to call 911. Porter responded that if Nance called 911, he would "come back" with his "friends" and "get him." Nance then went to a neighbor's house to call the police, and Shirley went to the bathroom to wash her face and clean the

3

blood out of her hair. While in the bathroom, Shirley realized that Porter had pulled out clumps of her hair. When she finished cleaning herself up, Shirley went back into the bedroom and laid down next to Porter. Shirley explained that Porter had told her to come back into the room and that she followed his instructions because she was "afraid" that "he might jump up and do something worse."

Porter's version of events was very different. According to Porter, Shirley woke him up by "poking" him in the face. Once he was up, she demanded that he give her "drugs and money." He told her that he did not have any, and then she jumped on top of him and bit his arm. Porter "grabbed her out of instinct" and knocked her off him. He admitted to pulling her hair but denied punching her in the head. Porter testified that, after he knocked her off, she "started screaming and went and woke [Nance] up." The two then demanded that he leave, and Nance told him that he was going to call the police. Porter admitted that he told Nance that if he called the police, he would "come back" with his "friends" and "get him."

Porter testified that he did not leave. Instead, he went back into the bedroom and began to get dressed. Shirley went outside, grabbed a garden hoe, and came back in and threatened him with it. Porter was able to calm her down. Porter testified that, even though Shirley and Nance had asked him to leave, and even though he was "scared" and "nervous" after Shirley threatened him with the garden hoe, once Shirley calmed down, the two of them went back to sleep. And the next

thing he remembered was being woken up by the sheriff's deputies, who were standing in the doorway calling his name.

Nance, for his part, testified that, at the time of the incident, he was awakened by Shirley screaming for him to call the police. He did not actually see Porter hit Shirley but did see clumps of Shirley's hair in her hand. Nance told Porter that he had to leave and that he was going to call the police, and Porter threatened to "get him" with his friends. Nance then went to a neighbor's home and called police.

Shortly thereafter, two deputies with the Comal County Sheriff's Office, Deputies G. Sepeda and G. McClure, responded to the call. They entered the house and announced that they were peace officers.

They called out for Shirley, and she came "rushing" out of the bedroom to meet them. She looked "kind of scared" and "kind of nervous." As she spoke with the deputies, she continued to appear a "little shaken" and a "little nervous," and she spoke with a "shaky voice," but she also appeared "relieved."

Deputy Sepeda observed red marks on Shirley's neck and felt a small bump coming up on her head. He took photos of her injuries, which were later admitted into evidence at trial. The photos showed bruising and missing patches of hair.

After the deputies spoke with Shirley, they walked into the bedroom to speak with Porter. The deputies found him underneath the covers, fully dressed.

5

They asked him to come into the kitchen to talk with them. Porter got out of bed, bent down to tie his shoes, and walked into the kitchen with the deputies.

When they entered the kitchen, Deputy Sepeda asked Porter to sit down in a chair, but Porter did not respond and kept walking toward the door leading to the living room. Once he reached the threshold, he took off running out the front door. Porter testified that he ran because he had warrants out for his arrest. The deputies chased after him. By happenstance, an off-duty officer who was returning home from work saw the deputies pursuing Porter. The officer jumped out of his vehicle and tackled Porter.

The deputies handcuffed Porter, stood him up against the police car, and began patting him down. Porter became angry and started banging his head on the passenger window, cutting his forehead. The deputies eventually calmed him down. Deputy Sepeda went back inside the house to finish talking to Shirley while Deputy McClure waited outside with Porter.

When the deputies were ready to take Porter to the station for booking, they noticed that, in addition to the cut on his forehead, he had a cut on his arm. Porter testified that he told the officers that, two weeks before his arrest, Shirley attacked him with a machete, lacerating his forearm. Porter testified that he did not report the alleged machete attack to the police at the time because he thought there were

warrants out for his arrest. The deputies took Porter to a local hospital, where his forearm was treated and put in a splint.

Porter was indicted and tried for assault. The jury found Porter guilty as charged. After hearing evidence from Porter and the State, the trial court sentenced Porter to 15 years' confinement.

## Limitation of Cross-Examination

In his first issue, Porter contends that the trial court abused its discretion in limiting his cross-examination of Shirley. Two weeks before Porter's trial, Shirley was charged with two felonies—aggravated assault and possession of a controlled substance. Neither charge involved or was in any way related to Porter. During the guilt phase of his trial, Porter sought to cross-examine Shirley about the pending charges. Specifically, he sought to establish (1) the existence of the charges, (2) the nature of the charges, and (3) the respective punishment ranges.

The trial court permitted Porter to examine Shirley about the existence of the charges and the respective punishment ranges, but it did not permit him to examine her about the nature of the charges. In other words, the trial court limited Porter's cross-examination to exposing the fact that Shirley had been charged with two unspecified felonies and that the punishment ranges were 5-to-99 years and 2-to-20 years. The trial court held that the nature of the charges—i.e., the type of felonies Shirley had been charged with committing—was irrelevant. Porter argues that the

trial court's ruling was an abuse of discretion because the nature of the charges was relevant to show Shirley had a motive to testify against him.

## A.    Applicable law and standard of review

Under the Sixth Amendment to the United States Constitution and Article 1 of the Texas Constitution, a criminal defendant has the right to cross-examine a witness who testifies against him. U.S. CONST. amends. VI, XIV; TEX. CONST. art. I, § 10. This includes the right to cross-examine a witness to show that she is biased against the defendant or has a motive to testify against the defendant. *See Irby v. State*, 327 S.W.3d 138, 145 (Tex. Crim. App. 2010); *Carpenter v. State*, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998). The defendant is "allowed great latitude to show 'any fact which would or might tend to establish ill feeling, bias, motive and animus on the part of the witness.'" *Carpenter*, 979 S.W.2d at 634 (quoting *London v. State*, 739 S.W.2d 842, 846 (Tex. Crim. App. 1987)).

However, the defendant's right to cross-examine a witness to show potential bias is not unlimited; it is not so broad as to include "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Irby*, 327 S.W.3d at 145 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). The trial court "retains wide latitude to impose reasonable limits on such cross-examination 'based on concerns about, among other things, harassment, prejudice,

confusion of the issues,'" witness safety, and "'repetitive or only marginally relevant'" testimony. *Id.*

When, as here, the defendant seeks to impeach a witness with evidence of pending criminal charges, the defendant must establish that the evidence is relevant. *Carpenter*, 979 S.W.2d at 634. To show that such evidence is relevant as a potential source of bias, the defendant must show some causal connection or logical relationship between a witness's pending charges and her potential bias to testify favorably for the State. *See Irby*, 327 S.W.3d at 140. As the Court of Criminal Appeals explains, "a defendant who cannot persuasively establish this connection has essentially failed to demonstrate that the evidence he seeks to introduce (i.e., the existence and/or severity of the pending charges) is relevant to prove the allegation of bias." *Johnson v. State*, 433 S.W.3d 546, 552 (Tex. Crim. App. 2014) (emphasis omitted).

We review a trial court's ruling that limits a defendant's cross-examination of a witness for bias for an abuse of discretion. *Irby*, 327 S.W.3d at 154.

## B. Cross-examination properly limited by trial court

Porter contends that the nature of the charges was relevant to show that Shirley had a motive to testify against him and for the State. According to Porter, because Shirley "quite reasonably had a motive to testify in expectation of leniency

9

from those charges," the nature of the charges (i.e., the type of felonies) was "relevant to show bias to testify favorably for the State." We disagree.

The fact that Shirley faced a lengthy prison sentence—and might avoid that sentence by cooperating with the State in its prosecution of Porter—is what made the charges pending against her relevant. Porter has failed to establish any stronger a logical connection between the evidence excluded and the bias alleged than the connection already established by the evidence that the trial court admitted—i.e., by the evidence of the charges' existence and respective punishment ranges.

The fact that Shirley was charged with felony aggravated assault and felony possession of a controlled substance would not, if presented to the jury, make Shirley seem any more prone to testifying favorably for the State than a similarly situated witness who stood accused of two other felonies with punishment ranges of up to 20 and 99 years. *Johnson*, 433 S.W.3d at 554. Both Shirley and the similarly situated witness "would stand in the same vulnerable relation to the State; other things being equal, they would be subject to the same risk and extent of punishment." *Id.* "In other words, had the jury been presented with the fact that [Shirley]'s felony charges were actually charges for [felony assault and felony possession], it would have had no incrementally greater capacity to evaluate h[er] potential for bias—its perception of the witness's vulnerable relationship with the State would be essentially the same as before." *Id.*

10

A trial court does not abuse its discretion by limiting cross-examination on potential bias or motive when the proponent does not establish the required causal connection or logical relationship. Porter failed to establish the required causal connection or logical relationship between the nature of the charges pending against Shirley and Shirley's potential motive to testify against him and for the State. We hold that the trial court did not abuse its discretion in limiting Porter's examination to the existence of the charges and their respective punishment ranges. *See id.* (holding that evidence of specific felony charges was not relevant to show witnesses' potential bias when defendant was permitted to expose fact that witnesses stood accused only of certain unspecified felonies).

We overrule Porter's first issue.

## Ineffective Assistance of Counsel

In each of his remaining issues, Porter contends that he received ineffective assistance of counsel.

**A.    Applicable law and standard of review**

To prevail on a claim for ineffective assistance of counsel, a defendant must satisfy the two-prong test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 688 (1984). *Macias v. State*, 539 S.W.3d 410, 415 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd).

11

Under the first prong, the defendant must show, by a preponderance of the evidence, "that counsel's performance was deficient." *Id.* at 687. This requires the defendant to prove "that counsel's performance fell below an objective standard of reasonableness, considering the facts of the particular case and judged at the time of counsel's conduct." *Ex parte Gonzales*, 204 S.W.3d 391, 393 (Tex. Crim. App. 2006).

Under the second prong, the defendant must show, by a preponderance of the evidence, "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. This requires the defendant to prove "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Macias*, 539 S.W.3d at 415.

In reviewing a claim for ineffective assistance of counsel, we are "highly deferential" to trial counsel. *Id.* at 415–16. We indulge a "strong presumption" that trial counsel's performance "fell within the wide range of reasonable professional assistance." *Ex parte LaHood*, 401 S.W.3d 45, 50 (Tex. Crim. App. 2013).

To prove that counsel's performance was deficient, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Blackwell v. State*, 193 S.W.3d 1, 21

12

(Tex. App.–Houston [1st Dist.] 2006, pet. ref'd) (quoting *Strickland*, 466 U.S. at 689). "Any allegation of ineffectiveness must be firmly founded in the record, which must demonstrate affirmatively the alleged ineffectiveness." *Blackwell*, 193 S.W.3d at 21. And "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003).

Thus, if the record does not contain affirmative evidence of counsel's reasoning or strategy, we normally presume that counsel's performance was not deficient. *Blackwell*, 193 S.W.3d at 21. "In rare cases, however, the record can be sufficient to prove that counsel's performance was deficient, despite the absence of affirmative evidence of counsel's reasoning or strategy." *Id.*

Porter contends that his trial counsel rendered ineffective assistance by failing to (1) object to the admission of extraneous-offense evidence, (2) request an instruction to disregard improper closing argument, (3) proffer an affidavit of non-prosecution, and (4) object to the admission of a letter he wrote to a Satanic Temple. We consider each contention in turn.

**B.    Failure to object to extraneous-offense evidence**

First, Porter argues that he received ineffective assistance of counsel because his trial counsel failed to object to the admission of certain extraneous-offense evidence—namely, evidence of a prior instance in which Porter assaulted Shirley.

13

During the guilt phase of trial, the State examined Shirley about her hesitancy to press charges against Porter:

> Q. Ms. Shirley, that night did you want to press charges on Mr. Porter?
>
> A. I did and I didn't.
>
> Q. Can you tell the jury a little bit about why you did not?
>
> A. I did not—I didn't want any future problems because it was not the first incident.
>
> Q. You say it wasn't the first incident. I want to kind of walk backwards. Was there an incident in September of 2015 in Hays County that officers responded to?
>
> A. Yes.

Shirley went on to "describe for the jury what happened that night." She testified that Porter "would not leave" her house and "started punching" her and "kicking" her in the kidneys, which caused her to "pee[] blood." Porter's trial counsel failed to object to the line of questioning.

On appeal, Porter argues that his trial counsel's failure to object constituted ineffective assistance of counsel because the evidence of his prior assault of Shirley was inadmissible and harmful. Porter contends that Shirley's testimony about the prior assault was inadmissible under Rule 404(b) because it was offered to show his propensity to commit assault in general. *See* TEX. R. EVID. 404(b)(1). We disagree.

14

Under Rule 404, evidence of extraneous crimes and other misconduct is inadmissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX. R. EVID. 404(b)(1). However, Rule 404 further provides that such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(2). When "an accused claims self-defense, the State, in order to show the accused's intent, may introduce rebuttal evidence of prior violent acts by the accused in order to show the intent of the person claiming self-defense." *Jones v. State*, 241 S.W.3d 666, 669 (Tex. App.—Texarkana 2007, no pet.); *see Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007) ("Extraneous-offense evidence is not inadmissible under Rule 404(b) when it is offered to rebut an affirmative defense or a defensive issue that negates one of the elements of the crime.").

Porter raised the issue of self-defense during voir dire. *Cf. Jones*, 241 S.W.3d at 669 ("In some circumstances, positions or defenses first posited during an opening statement are subject to impeachment."). During voir dire, Porter covered the subject of self-defense extensively. The record contains 23 pages of Porter's voir dire. Nine of those pages were devoted to the subject of self-defense. He defined self-defense for the prospective jurors, provided them with several

examples, sought to establish that family violence cases are often "he said, she said" cases in which the woman is the perpetrator, and questioned the prospective jurors to identify who would give the woman the "benefit of the doubt in a family violence situation." After voir dire, any reasonable juror would have known that Porter's defensive theory was that he acted in self-defense.[2] And when Porter's counsel later objected to the admission of evidence of a different prior assault, the trial court noted that the defense can open the door to such evidence during voir dire.

Under these circumstances, evidence of Porter's prior assault was admissible under Rule 404(b). *See id.* at 669–70 (holding that evidence of defendant's two prior assaults of complainant was admissible to rebut defensive theory, raised in opening statement, of self-defense). Because the evidence was admissible, trial counsel's failure to object to it does not constitute ineffective assistance.

## C. Failure to request instruction to disregard improper closing argument

Next, Porter argues that he received ineffective assistance of counsel because trial counsel objected to but failed to request an instruction to disregard the State's improper closing argument. During closing argument, the State noted that,

---

[2] As Porter readily admits, "self-defense was the central issue at trial." During Porter's cross-examination of Shirley, he questioned her about certain aspects of his theory of self-defense. Porter himself testified in detail that he acted in self-defense. And the charge included an instruction on self-defense. *See* TEX. PENAL CODE § 9.22.

16

while Porter testified that Shirley had threatened him with a garden hoe, defense counsel did not question Nance about the incident. The State then argued that defense counsel failed to question Nance because, if he had, Nance would have said, "no, that didn't happen." Porter objected that the State's argument improperly assumed what Nance's testimony would have been, and the trial court, in response, agreed that it constituted "argument beyond the evidence." However, Porter did not obtain an actual ruling from the trial court and did not request an instruction to disregard. On appeal, Porter contends that his trial counsel's failure to do so constituted ineffective assistance.

Assuming that trial counsel's failure to request an instruction to disregard constituted deficient performance, we hold that the deficient performance did not prejudice the defense because the State's comments were not harmful. "We consider three factors when assessing the impact of the harm arising from jury-argument error: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction)." *Bryant v. State*, 340 S.W.3d 1, 13 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). Assuming the State's comments were improper, they were not severe. The prosecutor made an isolated comment, which

17

she did not repeat. While the trial court did not instruct the jury to disregard the comment, the trial court did rebuke the prosecutor in front of the jury, agreeing with defense counsel that the comments were improper. Moreover, the State also failed to question Nance about the garden hoe, so any negative inference applied to it as well. And even if the prosecutor had not made the comment, the evidence against Porter was strong. It is undisputed that Porter hit Shirley. It is undisputed that Porter threatened Nance when Nance told him that he was going to call the police. And it is undisputed that Porter tried to flee from the police when they arrived at the scene. Shirley's account of what happened was corroborated by the testimony of the other witnesses and the photographs of her injuries taken by the police; Porter's account was not corroborated in any meaningful way at all.

Because the State's comments were not harmful, it is not reasonably probable that an instruction to disregard them would have changed the results of the proceeding. We hold that Porter's trial counsel's failure to request an instruction for the jury to disregard the prosecutor's comments did not constitute ineffective assistance of counsel.

**D.    Failure to proffer affidavit of non-prosecution**

Next, Porter argues that he received ineffective assistance of counsel because trial counsel failed to proffer into evidence an affidavit of non-prosecution

18

that Shirley signed shortly after the assault requesting that the State not prosecute Porter.

The record is silent as to why trial counsel failed to proffer the affidavit, and we must therefore presume that trial counsel pursued a sound trial strategy. For example, because Shirley had already testified as to why she was initially reluctant to press charges, trial counsel may have reasonably determined that proffering the affidavit would have been needlessly cumulative. *See Ex parte Chandler*, 182 S.W.3d 350, 356 (Tex. Crim. App. 2005) (counsel is not required "perform a useless or futile act"). Or perhaps trial counsel reasonably determined that, if he emphasized the affidavit, the State would show that Shirley signed the affidavit out of fear or for some other prejudicial reason, resulting in more unfavorable evidence before the jury than omitting the essentially redundant affidavit. Because the record is silent as to why trial counsel failed to proffer the affidavit, we hold that Porter has failed to rebut the "strong presumption" that trial counsel's performance "fell within the wide range of reasonable professional assistance." *LaHood*, 401 S.W.3d at 50.

## E. Failure to object to letter to Satanic Temple

Finally, Porter argues that he received ineffective assistance of counsel because trial counsel failed to object, during the punishment phase of trial, to the admission of a letter that Porter wrote to a "Satanic Temple" while in jail awaiting

19

trial. In the letter, Porter expressed an interest in the "religion of satanic worship" and requested that the temple provide him with literature and instruction on the religion. Assuming without deciding that the letter was inadmissible, we hold that Porter was not harmed by its admission.

During the punishment phase of trial, the State emphasized that Porter was a danger to the community. The State presented evidence of Porter's extensive criminal record, including his 14 prior convictions. These prior convictions included, among other offenses, assault, armed robbery, theft of a firearm, burglary, terroristic threat, possession of a controlled substance, unauthorized use of a motor vehicle, criminal mischief, and criminal trespass of a habitation. The State also presented evidence of other misconduct, including evidence that Porter had stolen from and threatened to kill his mother, broken into his sister's house, evaded arrest on multiple occasions, and assaulted numerous other men and women. The State emphasized Porter's failures to rehabilitate and commission of other offenses while on probation.

Moreover, punishment was assessed by the trial court, which is less likely to be unduly influenced or inflamed by such a letter than the jury, particularly in light of the other punishment evidence presented by the State. *Cf. Ellis v. State*, No. 02-02-00355-CR, 2003 WL 22026408, at *2 (Tex. App.—Fort Worth Aug. 29, 2003, no pet.) (mem. op., not designated for publication) (when appellant's punishment

was assessed by trial court, reviewing court could not "say that his prior convictions are without probative value and can serve only to improperly prove his 'bad character' and inflame the jury's prejudice because he had no jury").

In light of the evidence of Porter's extensive and violent criminal history, Porter has failed to prove that there is a reasonable probability that, but for trial counsel's failure to object to the letter, he would have received a lesser sentence.

We overrule Porter's second, third, fourth, fifth, sixth, seventh, and eighth issues.

## Motion to Abate

Porter has filed, for a second time, a motion to abate. He contends that he is entitled to an abatement of the appeal and a remand to the trial court so he can develop the record and file an out-of-time motion for new trial based on his argument that he received ineffective assistance of counsel.

Normally, when a reviewing court abates an appeal and remands the case to the trial court to allow the defendant to file an out-of-time motion for new trial, it is because the defendant was deprived of counsel during the period for filing a motion for new trial. *See Carnell v. State*, 535 S.W.3d 569, 572–73 (Tex. App.—Houston [1st Dist.] 2017, no pet.). But that is not what happened here.

Two days after Porter was sentenced, Porter filed a motion for new trial, which the trial court denied. That same day, trial counsel withdrew, and appellate

counsel was appointed in his place. Under the appellate rules, when the trial court denies a motion for new trial, it may later rescind its order, so long as such action occurs within 75 days after the trial court imposes or suspends judgment in open court. *See Awadelkariem v. State*, 974 S.W.2d 721, 728 (Tex. Crim. App. 1998), *overruled on other grounds by Kirk v. State*, 454 S.W.3d 511 (Tex. Crim. App. 2015); *see also* TEX. R. APP. P. 21.8(a) (trial court has 75 days after judgment is imposed or suspended to rule on motion for new trial). Thus, once appointed, Porter's appellate counsel had over two months to review the record, identify potential claims of ineffective assistance of counsel, develop evidence to support those claims, and file an amended motion for new trial. Because Porter was afforded sufficient time to develop the record before the expiration of the trial court's plenary power, we deny his motion to abate.

## Conclusion

We affirm the trial court's judgment.


Harvey Brown
Justice

Panel consists of Justices Higley, Brown, and Caughey.

Do not publish. TEX. R. APP. P. 47.2(b).