

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0473-13

**THAXTON D. JOHNSON, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIRST COURT OF APPEALS
### HARRIS COUNTY

PRICE, J., delivered the opinion of the Court in which KELLER, P.J., and MEYERS, WOMACK, KEASLER, HERVEY, COCHRAN, and ALCALA, JJ., joined. JOHNSON, J., concurred in the result.

### OPINION

The appellant was convicted by a jury of capital murder and sentenced to life imprisonment without the possibility of parole.[1] At trial, the appellant had sought to cross-examine two State's witnesses for bias by informing the jury of the specific felony

---

[1] *See* TEX. PENAL CODE §§ 19.03, 12.31.

charges—and concomitant ranges of punishment—the witness then faced in Harris County. However, the trial court limited his cross-examination to exposing the fact that the witnesses stood accused only of certain unspecified "felonies." On appeal, the First Court of Appeals rejected the appellant's claim that the trial court's ruling violated his right under the Confrontation Clause to effectively cross-examine adverse witnesses and affirmed the conviction.[2] In his petition for discretionary review, the appellant urges this Court to reverse the court of appeals on the rationale that "[m]erely informing the jury that the State's witnesses had pending felony indictments is insufficient to accomplish what the Sixth Amendment right of confrontation intends[.]"[3] We will affirm.

## FACTS AND PROCEDURAL POSTURE

### A. The Investigation

In the early hours of Valentine's Day 2010, Susan Griert awoke to the sounds of shattering glass and the voice of her boyfriend, William Thompson, crying out for her. She found Thompson lying on the floor of their bedroom with blood "gushing up out of his mouth," the result of gunshot wounds to his chest and face. She called 9-1-1 emergency services and was directed to administer CPR until paramedics arrived at the scene. Though first responders arrived in time to administer aid to Thompson, he ultimately succumbed to

---

[2] *Johnson v. State*, 2013 WL 1451292, at *8 (Tex. App.—Houston [1st Dist.] Apr. 9, 2013) (mem. op., not designated for publication).

[3] Appellant's Petition for Discretionary Review at 3-5.

his wounds and was later pronounced dead.

In the course of the ensuing murder investigation, Houston Police Department detectives discovered that the appellant, a handyman whom Thompson and Griert had often paid to do odd jobs, recently had a falling out with the couple. As they dug deeper into the appellant's connection with the victim, detectives came into contact with brothers Joseph and Stefan Kennedy. Stefan, a friend of the appellant, told investigators that the appellant, while walking with Stefan through Thompson's neighborhood on the night of the shooting, stopped in front of Thompson's house and "pulled up his shirt," exposing the wooden handle of a gun. Evidently panicked, Stefan fled the scene. As he did so, he "heard . . . a loud noise" that sounded "like a boom," as though "a door was being kicked." Joseph, meanwhile, told investigators that "around that time" he received a phone call from the appellant, who threatened to "kill Brandon [a third Kennedy brother] and Stefan" if they "snitch[ed]" on him. On the basis of these allegations and other evidence tying the appellant to Thompson's murder, the appellant was arrested and charged with capital murder.[4]

## B. At Trial

After receiving notice of the State's intent to call Joseph and Stefan as witnesses against him, the appellant discovered that each brother was facing at least one felony charge

---

[4] One witness testified that the "appellant told her that he had robbed someone to get money and marijuana[.]" *Johnson*, 2013 WL 1451292, at *3; *see also* TEX. PENAL CODE § 19.03(a)(2) ("A person commits [capital murder] if the person commits murder as defined under Section 19.02(b)(1) and . . . the person intentionally commits the murder in the course of committing or attempting to commit . . . robbery[.]").

in Harris County. Specifically, Joseph was under indictment for two counts of first-degree felony theft, while Stefan was indicted for first-degree felony aggravated robbery, state-jail felony theft, and Class-A misdemeanor assault. Accordingly, in a pretrial hearing, counsel for the appellant made the following request:

> [F]or the purpose of the Defense, I believe that two of the witnesses – a Mr. Joseph Kennedy, if he's called, and Mr. Stefan Kennedy, if he is called – have pending felony cases. We believe that it would be appropriate on cross-examination to examine in front of the jury whether or not any offers have been made or whether or not they are testifying with the idea that this will be of benefit.

The trial court initially "ha[d] no problem with that," and granted the defense request. Later in the hearing, however, the State asked "orally in a motion in limine" that the appellant's counsel "not be allowed to go into what those pending charges are or anything they might have in a pending case." The appellant's counsel responded:

> I think the fact that what the cases are – the degree and the range of punishment that he is facing – are absolutely material as to the degree to which these might influence him in terms of garnering favor for the State for his testimony.
>
> Certainly, if somebody has pending misdemeanor cases – a great deal different than if someone has a pending first-degree felony. We agree that is part of the equation . . . of what goes into the possible fabrication and the possible tipping of the testimony against my client[.]

The trial court, evidently disagreeing, issued a preliminary ruling as to the admissibility of the specific felony offenses and punishment ranges the Kennedy brothers faced: "Those two will not be admitted before the jury[.]" The trial court later clarified that it would permit counsel to "ask whether or not those things that are pending: Are they misdemeanors or are

they felonies? That's it."

Several times throughout the trial, the appellant asserted his "constitutional right" to "confront the witnesses against [his] client" by "getting into whether or not there was anything out there that may influence his testimony against my client." Over the State's objection that "any further questioning" relating to the specific offenses and punishment ranges would be "beyond any [Rule] 609 impeachable conviction,"[5] the appellant beseeched the trial court to allow him to "provide copies of the indictments in each case" so as to "identify what those cases are." The appellant sought also to "ask [each witness] to inform the jury that these were first-degree felonies and that the punishment range for a first-degree felony is from five to ninety-nine years or life[.]" Each time this request was made, however, the trial court adhered to its earlier ruling that the extent of the appellant's cross-examination of the Kennedy brothers' pending charges would be limited to eliciting their classification as either "misdemeanors" or "felonies." The appellant was ultimately convicted of capital murder, and, since the State did not seek the death penalty, the appellant's sentence was automatic: imprisonment for life without the possibility of parole.

### C. On Appeal

Before the First Court of Appeals, the appellant argued that "as a result" of the trial

---

[5] *See* TEX. R. EVID. 609(a) ("For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted . . . but only if the crime was a felony or involved moral turpitude . . . and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party.").

court's limitation on his cross-examination of Joseph and Stefan "he was denied the ability to confront th[ose] witnesses in violation of the Sixth Amendment of the United States Constitution."[6]  As he had argued before the trial court, the appellant reasoned that "there was a causal connection . . . between the witnesses' 'vulnerable status' and their potential bias to testify in a manner favorable to the State," and that the strength of that causal connection could not be optimally explored on cross-examination without delving into the nature, degree, and punishment ranges of the offenses underlying the charges pending against each witness.[7]

The court of appeals disagreed, holding that the appellant had not adequately established the requisite "causal or logical connection between the charges pending . . . and any bias based on [the witnesses'] expectation of . . . favorable treatment by the State[,]" thereby essentially failing to show the relevance of the proffered evidence.[8]  The court of appeals reasoned that "[t]he admission of . . . the indictments in the pending cases and testimony about the punishment range . . . would not have any further shown Joseph or Stefan's 'vulnerable relationship' with the State" than the testimony actually elicited at trial:

---

[6]

*Johnson*, 2013 WL 1451292, at *5.

[7]

*Id.*

[8]

*Id.* at *8.

that both witnesses were simply facing "felony" charges in Harris County.[9]  And as the appellant was, in its opinion, "otherwise afforded an opportunity for a thorough and effective cross-examination," the court of appeals ruled that "the trial court did not err in limiting appellant's request for further cross-examination about the specific felony charges . . . and the punishment range of those offenses," and it accordingly affirmed the judgment of conviction below.[10]

## THE LAW

The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."[11]  While, as its name would suggest, this "Confrontation Clause" generally protects the defendant's right to physically "confront" his accusers face-to-face,[12] this is hardly the only right protected by the Confrontation Clause.[13]  Rather, "[t]he main and

---

[9] *Id.*

[10] *Id.* at *8-9.

[11] U.S. Const. amend. VI.

[12] *See, e.g., Crawford v. Washington*, 541 U.S. 36, 57 (2004) ("The substance of the constitutional protection is preserved to the prisoner in the advantage . . . of seeing the witness face to face[.]") (quoting *Mattox v. United States*, 156 U.S. 237, 244 (1895)).

[13] *See, e.g., Delaware v. Van Arsdall*, 475 U.S. 673, 678 ("The right of confrontation . . . means more than being allowed to confront the witness physically.") (quoting *Davis v. Alaska*, 415 U.S. 308, 315 (1974)) (internal quotation marks omitted).

essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination[,]" because that is "the principal means by which the believability of a witness and the truth of his testimony are tested."[14]

To that end, we have held that "it is not within a trial court's discretion to prohibit a defendant from engaging in 'otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness,'"[15] Nor, indeed, may a trial court prevent a defendant from "pursu[ing] his proposed line of cross examination" when it can be said that "[a] reasonable jury might have received a significantly different impression of [the witness]'s credibility had . . . counsel been permitted" to do so.[16] The Fifth Circuit has added, in this context, that until it can be "determine[d] that the cross examination satisfied the Sixth Amendment, the [trial] court's discretion" simply "does not come into play."[17] This qualification of a trial court's discretion to limit cross-examination for bias appropriately accounts for the fact that "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination[,]" and is

---

[14]

*Davis*, 415 U.S. at 315-16 (quoting 5 J. Wigmore, Evidence § 1395, p.123 (3d ed. 1940)).

[15]

*Hurd v. State*, 725 S.W.2d 249, 252 (Tex. Crim. App. 1987) (quoting *Van Arsdall*, 475 U.S. at 680).

[16]

*Van Arsdall*, 475 U.S. at 680.

[17]

*See United States v. Landerman*, 109 F.3d 1053, 1061-62 (5th Cir. 1997) ("Although the scope of cross examination is within the discretion of the district court, that discretionary authority comes about only after sufficient cross examination has been granted to satisfy the Sixth Amendment.").

"always relevant as discrediting the witness and affecting the weight of his testimony."[18]

This is not to say that trial courts do not "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination," so long as those limits do not operate to infringe upon the Confrontation Clause's guarantee of "an *opportunity* for effective cross-examination."[19] After all, the accused is not entitled to "cross-examination that is effective in whatever way, and to whatever extent," he might wish.[20] In light of this, in those circumstances in which the defendant seeks to "impeach a witness with evidence of pending criminal actions," we have said that the trial court *does* have discretion to place limits on those areas of cross-examination in which the defendant fails to "establish some causal connection or logical relationship between the pending charges and the . . . 'vulnerable relationship'" alleged.[21] This is because a defendant who cannot persuasively establish this connection has essentially failed to demonstrate that the evidence he seeks to introduce (*i.e.*, the existence and/or severity of the pending charges) is *relevant* to prove the allegation of bias.[22]

---

[18] *Davis*, 415 U.S. at 316-17 (quoting 3A J. Wigmore, Evidence § 940, p. 775 (Chadbourn rev. 1970)).

[19] *Van Arsdall*, 475 U.S. at 679 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)).

[20] *Id.*

[21] *Carpenter v. State*, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998).

[22] *Id.* at 635.

Given that our "causal connection" requirement is ultimately rooted in the concept of relevance, however, it must also be borne in mind that "[t]he failure to affirmatively establish the fact sought does not prevent the cross-examination from having probative value in regard to the witness' credibility."[23]  This sensibility is aptly expressed in an oft-repeated legal aphorism: "A brick is not a wall."[24]  To be considered "relevant," the proffered evidence need not definitively prove the bias alleged—it need only "make the existence" of bias "more probable or less probable than it would be without the evidence."[25]  The question in this case is whether the Confrontation Clause guarantees that the accused be permitted to use every brick at his disposal—no matter how incrementally it may serve to reinforce the wall.

---

[23]

  *Carroll v. State*, 916 S.W.2d 494, 500 (Tex. Crim. App. 1996) (quoting *Spain v. State*, 585 S.W.2d 705, 710 (Tex. Crim. App. 1979)).

[24]

  *Cf.* Steven Goode, Olin Guy Wellborn III, & M. Michael Sharlot, 1 TEXAS PRACTICE: GUIDE TO THE TEXAS RULES OF EVIDENCE § 401.3, at 115-16 (3d ed. 2002) ("To be relevant, the offered item of evidence need not establish a prima facie case.  McCormick explains the distinction between relevancy and sufficiency:

> Whether the entire body of one party's evidence is sufficient to go to the jury is one question.  Whether a particular item of evidence is relevant is quite another.  It is enough if the item could reasonably show that a fact is slightly more probable than it would appear without that evidence. . . . Thus, the objection that the inference for which the fact is offered 'does not necessarily follow' is untenable. It poses a standard of conclusiveness that very few single items of circumstantial evidence ever could meet.  A brick is not a wall.

This statement of the principle is fully consistent with Texas case law.") (footnotes and citations omitted) (quoting McCormick, EVIDENCE § 185 (5th ed. 1999)).

[25]

  *See* TEX. R. EVID. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

## ANALYSIS

### A. No Logical Connection?

The court of appeals determined that the "appellant did not introduce additional facts showing any causal or logical connection between the charges pending against Joseph and Stefan and any bias based on their expectation of a deal . . . for more favorable treatment by the State based on their testimony in appellant's trial."[26] In support of this conclusion, the court of appeals relied upon our opinions in *Carpenter v. State* and *Irby v. State*, two cases in which we held that evidence alleged by the respective defendants to demonstrate an accusatory witness's "vulnerable relationship" with the State was properly excluded due to each defendant's failure to establish a "causal" or "logical" connection between the evidence and the bias alleged.[27] The appellant, meanwhile, claims that the court of appeals's reliance on these cases is misplaced, as each of the tentative "connections" between the evidentiary proffers and biases in *Carpenter* and *Irby* is markedly weaker than the connection articulated at trial and on appeal in this case.[28]

---

[26] *Johnson*, 2013 WL 1451292, at *8.

[27] *See Carpenter*, 979 S.W.2d at 635; *Irby v. State*, 327 S.W.3d 138, 154 (Tex. Crim. App. 2010).

[28] In his petition for discretionary review, the appellant asks us to review only the court of appeals's determination that "the trial court did not abuse its discretion when it restricted defense counsel from eliciting from the state's witnesses the *types of felony offenses and their ranges of punishment* which were pending against those state's witnesses." Appellant's Petition for Discretionary Review at 2 (emphasis added). We express no opinion, therefore, as to whether the court of appeals erred to hold that "[t]he admission of *copies of the indictments* in the pending cases

In *Carpenter*, the defendant was "precluded from cross-examining [a] State's witness" about the "federal conspiracy charges then pending against" that witness.[29] While the defendant "posit[ed] that the pending federal charges demonstrated [the witness's] vulnerable relationship with the State,"[30] we were not persuaded:

> Appellant does not argue, and the record does not demonstrate, why prosecution by the federal government for theft and conspiracy to possess and distribute controlled substances would tend to show that the witness' testimony in this unrelated state prosecution . . . might be biased. * * * [T]he testimony in support of Appellant's bill of exception does no more than establish the factual basis of the pending federal charges.[31]

On the basis of the defendant's failure to show a "logical connection" between the federal charges and the witness's potential for bias, we concluded that "the Court of Appeals' determination that there was a danger that allowing such cross-examination would confuse the jury, or tempt it to use the facts developed in an improper way," was "sound."[32]

In *Irby*, the defendant "wanted to cross-examine [the testifying complainant] about the fact that he was on deferred-adjudication probation for aggravated assault with a deadly

---

. . . would not have any further shown Joseph or Stefan's 'vulnerable relationship' with the State or any potential motive, bias, or interest." *Johnson*, 2013 WL 1451292, at *8 (emphasis added).

[29] *Carpenter*, 979 S.W.2d at 633-34.

[30] *Id.* at 634.

[31] *Id.* at 635.

[32] *Id.* (internal quotation marks omitted).

weapon."[33]   As in *Carpenter*, the defendant argued to the trial judge that the witness's "'vulnerable status' was relevant to show bias and motive[.]"[34]   Once again, however, we held that the "appellant failed to make a logical connection between [the complainant's] testimony . . . and his entirely separate probationary status[.]"[35]   Reasoning that a mere showing of the witness's "vulnerable relationship" with the State, if evidenced *only* by his probationary status, would not make it any more or less probable that the witness harbored some bias in favor of the State, we concluded that "the trial judge did not abuse his discretion in excluding this impeachment evidence because it was irrelevant."[36]

At least with respect to the "nature" of the witnesses' alleged offenses (*i.e.*, the *type* of felonies), we disagree with the appellant that he has provided any stronger a logical connection between the evidence proffered and the bias alleged than either of the posited connections we found to be inadequate in *Carpenter* and *Irby*.  The fact that a witness stands accused of (for example) "felony theft" would not, if presented to the jury, make that witness seem any more prone to testifying favorably for the State than a similarly situated witness who stood accused only of some unspecified "felony."  Both hypothetical witnesses—the one

---

[33]   *Irby*, 327 S.W.3d at 140.

[34]   *Id.*

[35]   *Id.* at 154.

[36]   *Id.*

accused of "felony theft" and the other accused of the unspecified "felony"—would stand in the same vulnerable relation to the State; other things being equal, they would be subject to the same risk and extent of punishment. In other words, had the jury been presented with the fact that Joseph's felony charges were actually "felony theft" charges (and that Stefan's were actually "felony robbery" charges), it would have had no incrementally greater capacity to evaluate his potential for bias—its perception of the witness's vulnerable relationship with the State would be essentially the same as before. Thus, as in *Carpenter*, "Appellant's bill of exception[,]" insofar as it pertains to the nature of the witnesses' charged offenses, "does no more than establish the factual basis of the pending [State] charges."[37]

On the other hand, unlike the nature of a charged offense, the range of punishment attendant to a charged offense does have an incrementally greater impact on the jury's ability to assess the witness's motive to alter or fabricate his testimony. A jury privy to the considerable extent to which the State might seek, were it so inclined, to have the witness punished in the pending matter would *at least* be in a better position to assess a witness's motive—if not his actual intent—to color his testimony in favor of the State. And from the jury's perspective (again, other things being equal), a witness accused of a felony carrying the potential of a life sentence would be that much more likely—if only by a "brick"—to seek to mollify the State than a witness merely facing some undifferentiated "felony" charge.

Further, the punishment-range evidence proffered by the appellant does not

---

[37] 979 S.W.2d at 633-35.

merely—as did the proffers in *Carpenter* and *Irby*—state a true but inconsequential fact about each witness. Instead, this evidence would have served to distinguish each witness from other, merely conceivably biased felony-indicted witnesses in such a way as to make the existence of the fact sought to be proved (*i.e.*, that the witnesses's testimonies may have been influenced by their vulnerable relationships with the State) "more probable or less probable than it would be without the evidence."[38] We therefore agree with the appellant that the logical connection between Joseph and Stefan's punishment ranges and their respective incentives to curry favor with the State is meaningfully stronger than the connections posited in either *Carpenter* or *Irby*. That evidence was indeed relevant, and at least marginally more probative, to enhance the showing of their potential biases in favor of the State.

## B. Abuse of Discretion

The appellant having satisfactorily established the relevancy of the pertinent punishment ranges to proving the bias he attributed to Joseph and Stefan Kennedy, the trial court *would* have abused its discretion to exclude that evidence on the basis of the appellant's failure to demonstrate a "logical connection" between the two. But a trial court's discretion does not simply terminate upon a showing that the proffered impeachment evidence and the allegation of bias are logically connected.[39] Indeed, it is a basic tenet of the law of evidence

---

[38] TEX. R. EVID. 401.

[39] *See, e.g.*, *Davis*, 415 U.S. at 316 ("Cross-examination is . . . [s]ubject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation[.]").

that merely establishing the relevancy of proffered evidence does not *necessarily* guarantee its admissibility.[40]  Rather, and specifically "insofar as the Confrontation Clause is concerned[,]"

> trial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.[41]

This latitude is exceeded only when the trial court exercises its discretion to so drastically curtail the defendant's cross-examination as to leave him "unable to make a record from which to argue why [the witness] might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial."[42]  This kind of trial-court error is most conspicuous, of course, when the trial court *entirely* forecloses the defense from exposing—"prohibit[s] *all* inquiry into"—a "prototypical form of bias."[43]  But it may also be subtler, such as when the only record-making permitted the defense is so circumscribed that "[a] reasonable jury might have received a *significantly different impression* of [the

---

[40]

*See, e.g.*, TEX. R. EVID. 402 ("All relevant evidence is admissible, *except as otherwise provided* by Constitution, by statute, by these rules, or by other rules prescribed pursuant to statutory authority.") (emphasis added).  At trial, the appellant asserted only a Sixth Amendment right to the admission of evidence relating to the witnesses' pending charges; he made no identifiable argument that state law might also afford him the very same right.  He neither asserted any such state-law right on appeal nor elected to do so in his petition for discretionary review.

[41]

*Van Arsdall*, 475 U.S. at 679.

[42]

*Davis*, 415 U.S. at 318.

[43]

*Van Arsdall*, 475 U.S. at 680.

witness's] credibility had [the defendant's] counsel been permitted to pursue his proposed line of cross-examination."[44]

In support of his argument that the trial court abused its discretion, the appellant cites to our opinion in *Carroll v. State*, wherein we ruled that the "[a]ppellant's inquiry into [the State's witness's] incarceration, his pending charge and possible punishment as a habitual criminal, was appropriate to demonstrate [the witness's] potential motive, bias or interest to testify for the State."[45] On the basis of this excerpted language, the appellant asserts that an accused, having established "that the witness against him is in a vulnerable relationship with the authority who has called him as a witness[,]" is always "entitled to show the extent of that vulnerability."[46] In effect, the appellant argues that only a categorical rule foreclosing the trial court's discretion to exclude evidence of the punishment ranges faced by felony-indicted State's witnesses will suffice to "accomplish what the Sixth Amendment intends" *vis-à-vis* guaranteeing an opportunity for effective cross-examination.

We disagree. In the first place, *Carroll* cannot reasonably be relied upon for the proposition that a criminal defendant has a right to elicit a felony-indicted State's witness's potential punishment range on cross-examination. The defendant in *Carroll* sought only to impeach the witness with evidence that he "was currently incarcerated and awaiting trial on

---

[44] *Id.* (emphasis added).

[45] 916 S.W.2d at 500.

[46] Appellant's Brief at 18-19.

an aggravated robbery charge *and that he had several prior felony convictions.*"[47] The excerpt of *Carroll* relied upon by the instant appellant is therefore better understood as an affirmation of an accused's right to prove to the jury that his accuser may be subject to punishment as a habitual criminal (and could, as a result, be all the more biased in favor of the State), rather than his right to *precisely* prove the punishment range of the charged offense.

Second, and more to the point, the appellant's argument fails to account for the fact that "the Confrontation Clause guarantees [only] an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."[48] This is not a situation in which the trial court entirely foreclosed even the possibility of cross-examination into a "prototypical form of bias."[49] Nor is it a situation about which it can necessarily be said that the jury "might have received a *significantly* different impression of [the witness's] credibility" had it only been privy to the *exact* punishment range concomitant to first-degree felony offenses.[50] To the contrary, in this case the trial court not only allowed the appellant to allege the potential for bias (by asking

---

[47] *Carroll*, 916 S.W.2d at 499 (emphasis added).

[48] *Van Arsdall*, 475 U.S. at 679 (quoting *Fensterer*, 474 U.S. at 20) (internal quotation marks omitted).

[49] *Van Arsdall*, 475 U.S. at 680.

[50] *Id.* (emphasis added).

each witness whether he expected his testimony to be of any benefit to him); it allowed him to substantiate that allegation (by asking each witness whether he had any charges pending in Harris County), and to show that the potential for bias was weightier than it otherwise might have been (by asking each witness whether those charges were for "misdemeanor" or "felony" offenses). It appears, in other words, that in this instance the appellant *was* "permitted . . . to make a record from which" to argue, in a manner consistent with the logical connection he posited at trial and on appeal (although perhaps to a lesser extent than he would have preferred), that the witnesses' vulnerable relationships with the State may have colored their testimonies.[51]

While the appellant makes a fair point that his inability to explore the exact extent of each witness's potential for bias ultimately rendered each cross-examination at least marginally less effective than it otherwise might have been, a "less than optimal" opportunity for cross-examination does not, of itself, violate the Sixth Amendment. Only when the trial court's limitation on cross-examination sweeps so broadly as to render the examination wholly ineffective can it be said that the trial court commits an error of constitutional dimension.[52] And, on the facts of this case, we are simply unwilling to say that the trial

---

[51] *Davis*, 415 U.S. at 318.

[52] *Cf. Crane v. Kentucky*, 476 U.S. 683, 690-91 (1986) ("[A]n essential component of procedural fairness is an opportunity to be heard. That opportunity would be an empty one if the State were permitted to exclude competent, reliable evidence . . . when such evidence is central to the defendant's claim of innocence. . . . [E]xclusion of this kind of exculpatory evidence deprives a defendant of the basic right to have the prosecutor's case encounter and 'survive the crucible of

court's limitation so deprived the appellant of an important untrod avenue of examining the witnesses for bias as to leave his overall opportunity for cross-examination ineffective. The trial court acted within its discretion, once the particular allegation of bias had been "effective[ly]" made before the jury, to prevent the appellant from presenting all the minutiae—incrementally probative though each might individually have been—tending only marginally to enhance his allegation of bias against the witness.[53] In light of this, we agree with the court of appeals that "the trial court did not violate appellant's right to confront the witnesses against him" by preventing him from eliciting the precise punishment ranges

---

meaningful adversarial testing.'") (quoting *United States v. Cronic*, 466 U.S. 648, 656 (1984)); *Potier v. State*, 68 S.W.3d 657, 665-66 (Tex. Crim. App. 2002) ("[T]he exclusion of a defendant's evidence will be constitutional error only if the evidence forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense. * * * That the defendant was unable to . . . present his case to the extent and in the form he desired is not prejudicial where, as here, he was not prevented from presenting the substance of his defense to the jury.") (internal quotation marks omitted) (quoting *United States v. Willie*, 941 F.2d 1384, 1398-99 (10th Cir. 1991)); *Hammer v. State*, 296 S.W.3d 555, 562-63 (Tex. Crim. App. 2009) ("[T]he constitution is offended if the [defendant is] prohibit[ed] from cross-examining a witness concerning possible motives, bias, and prejudice to such an extent that he could not present a vital defensive theory.") (citing *Potier*, 68 S.W.3d at 663-65).

[53] None of this is to say that the trial court was under any obligation to prohibit the appellant from eliciting the potential punishment ranges that Joseph and Stefan faced. Had the trial court been content that the additional questioning would not run the risk of wasting time or confusing or prejudicing the jury—or that the proffered evidence would indeed significantly impact the jury's impression of the witness's credibility—it could have permitted the appellant to ask the pertinent question and (at the very least) receive the witness's answer. But neither are we inclined to say, as a categorical matter, that a trial court's ruling preventing a criminal defendant from cross-examining a State's witness as to the precise punishment range attendant to the witness's pending charge constitutes a *per se* violation of the Confrontation Clause. When, as here, the defense is able to adduce evidence that an adverse witness is susceptible to *some* significant degree of punishment, it simply cannot be said that "counsel was unable to make a record from which to argue why [the witness] might have been biased[.]" *Id.*

attendant to Joseph and Stefan's pending felony charges.[54]

### III. CONCLUSION

With respect to the "nature" of the State's witnesses' pending charges (*i.e.*, that Joseph's pending first-degree felony charges were based on theft and that Stefan's pending first-degree felony charge was based on robbery), the appellant has failed to demonstrate the relevancy of the proffered evidence to support the allegation of bias. With respect to the punishment ranges attendant to the witnesses' pending charges (*i.e.*, that each witness's felony charge carried a potential sentence of five to ninety-nine years' incarceration or life imprisonment), while the appellant has satisfactorily demonstrated the incremental probativeness of the proffered evidence, he has failed to show that "[a] reasonable jury might have received a significantly different impression of" either witness's "credibility had . . . counsel been permitted" to elicit that evidence.[55] The court of appeals rightly concluded as much, and its judgment is affirmed.

DELIVERED:      June 18, 2014
PUBLISH

---

[54] *Johnson*, 2013 WL 1451292, at *8.

[55] *Van Arsdall*, 475 U.S. at 680.