

**NUMBER 13-18-00003-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**FLABIANO MAYORGA, JR.
A/K/A FLABIANO MAYORGA,**                                          **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                          **Appellee.**

---

On appeal from the 404th District Court
of Cameron County, Texas.

---

# MEMORANDUM OPINION

**Before Justices Benavides, Longoria, and Hinojosa
Memorandum Opinion by Justice Longoria**

Appellant Flabiano Mayorga, Jr. a/k/a Flabiano Mayorga was convicted for continuous sexual abuse of a child and aggravated sexual assault of a child. *See* TEX. PENAL CODE ANN. §§ 21.02, 22.021(a)(2)(B) (West, Westlaw through 2017 1st C.S.). By three issues, Mayorga argues that: (1) the trial court improperly commented on his failure

to testify; (2) the trial court abused its discretion by restricting his cross-examination of a witness; and (3) the trial court and the State improperly shifted the burden of proof. We affirm.

## I. BACKGROUND

Mayorga was indicted on charges of continuous sexual assault of a child (count one) and aggravated sexual assault of a child (count two). *See id*. §§ 21.02, 22.021(a)(2)(B). The child complainant in both counts is G.M., who was younger than fourteen at the time of the alleged offenses.[1] Count one alleged that Mayorga committed multiple acts of indecency, with the intent to arouse or gratify his sexual desire, against G.M. between May 1, 2010 and November 1, 2015. Count two alleged that on November 18, 2015, Mayorga committed a single act of aggravated sexual assault by causing the sexual organ of G.M. to contact the sexual organ of Mayorga.

G.M.'s mother testified at the trial. The following exchange occurred with Mayorga's counsel:

| [Mayorga's Counsel]: | Okay. Now, let's get to when you actually get to the hospital. Okay. You were visited by either a psychologist or someone that suggested that you would have to take medication with regards to, you know—I'm not going to say mental issues but the issues that you were dealing with? |
|---|---|
| [State]: | Your Honor, I'm going to object to relevance. We're going off on a big tangent, and it's not relevant. |
| [Mayorga's Counsel]: | Judge, it's our position that this is the segue to her jealousy for her irrational acts that she's committed, for example, jumping out of the van to jumping on my client's vehicle because— |

---

[1] To protect the identity of the child, we refer to her using a pseudonym. *See* TEX. R. APP. P. 9.8(b).

[Court]: Well, ask her specifically. I'll give you a little bit of leeway.

[Mayorga's Counsel]: Ma'am, you suffer from—from mental issues where you are—you are a very jealous wife, correct?

[Mother]: No.

[Mayorga's Counsel]: In fact, when Mr. Mayorga would try to go to work, you would get on the vehicle in such a way that he couldn't leave, correct?

[Mother]: No.

[Mayorga's Counsel]: In fact—.

[Court]: All right. I'm going to stop you here. Unless you have evidence to contradict this that you're—you're going into representations of testimony that the Defendant is not required to give. Do you understand what I'm saying? In other words—

[Mayorga's Counsel]: Yes, Judge.

[Court]: —the Fifth Amendment is such that your client is not going to testify, but in your questioning you may not infer that if he testified this would be his testimony. So I'm going to subject her to recall based on what happens with the Fifth Amendment.

[Mayorga's Counsel]: Yes, Judge.

[Court]: All right. So it's done.

[Mayorga's Counsel]: Right. Just for—in our case-in-chief, Judge, we get to call the witnesses—

[Court]: Of course.

[Mayorga's

3

Counsel]:   —that have knowledge.  So to suggest that it has to come from a specific witness, my objection is—

[Court]:    Well, at this point in time until there is independent testimony, I'm stopping it; and I'll recall her in your case-in-chief on this issue if you have independent testimony.

[Mayorga's
Counsel]:   Judge, the only way she could be recalled on my case-in-chief is if they—if they're going to call her as a rebuttal.

[Court]:    I'm going to subject her.  She's here under subpoena.  I'm ordering her to be available for your case-in-chief.

[Mayorga's
Counsel]:   Very well, Judge.  So the Court is not going to allow me to at least lay the foundation for whatever witnesses that I have?

[Court]:    No, not at this point in time because I don't have anything to substantiate where your position is coming from other than to infer if the Fifth Amendment is—is exercised or not exercised.

The jury also heard testimony from G.M. that Mayorga touched her vagina for the first time when she was six years old.  She testified that it happened multiple times over the following years.  Joanna Frausto, the forensic interviewer at Maggie's House, a children's advocacy center, testified that she interviewed G.M. in 2015 when G.M. was eleven.  According to Frausto, G.M. told her that Mayorga used his fingers to move up her legs and touch her private, that "he would grab my boobs," that he put "[h]is private or thing in my private," and that he put his private part in her butt and it hurt.  The jury heard evidence that G.M.'s hymen was torn in two places.  G.M., her siblings, and her mother all testified that Mayorga was physically abusive.  G.M. further testified that she waited so long to make an outcry statement because she was afraid that Mayorga would hurt her mother.

4

The jury found Mayorga guilty on both counts and assessed punishment of fifty years' imprisonment in the Institutional Division of the Texas Department of Criminal on each count. The trial court sentenced Mayorga accordingly and ordered the sentences to run consecutively. This appeal followed.

## II. COMMENT ON DEFENDANT'S FAILURE TO TESTIFY

In his first issue, Mayorga argues that the trial court violated his constitutional rights by commenting on his failure to testify.

### A. Standard of Review and Applicable Law

> Neither the trial judge nor the prosecutor can comment on the failure of an accused to testify. Such a comment violates the privilege against self-incrimination and the freedom from being compelled to testify contained in the Fifth Amendment of the United States Constitution and Article I, § 10, of the Texas Constitution.
>
> . . .
>
> To violate the right against self-incrimination, the offending language must be viewed from the jury's standpoint and the implication that the comment referred to the defendant's failure to testify must be clear. It is not sufficient that the language might be construed as an implied or indirect allusion. The test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify. In applying this standard, the context in which the comment was made must be analyzed to determine whether the language used was of such character.

*Bustamante v. State*, 48 S.W.3d 761, 764–65 (Tex. Crim. App. 2001); *see* U.S. CONST. amend. V; TEX. CONST. art. I, § 10; *see also Randolph v. State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011) ("[T]he implication that the State referred to the defendant's failure to testify must be a clear and necessary one. If the language might reasonably be construed as merely an implied or indirect allusion, there is no violation.").

5

Generally, commenting on the defendant's failure to testify is an error of constitutional magnitude. *Snowden v. State*, 353 S.W.3d 815, 818 (Tex. Crim. App. 2011). However, alluding to the defendant's failure to testify is not an error if the defendant ultimately testifies. *See Bustamante*, 48 S.W.3d at 766 (citing *Terry v. State*, 489 S.W.2d 879, 881 (Tex. Crim. App. 1973)). The State may also properly comment on a defendant's failure to produce evidence, as long as the remarks do not fault the defendant for failing to testify. *See Patrick v. State*, 906 S.W.2d 481, 491 (Tex. Crim. App. 1995); *Orellana v. State*, 381 S.W.3d 645, 656 (Tex. App.—San Antonio 2012, pet. ref'd) (observing that it does not inappropriately shift the burden of proof when the State comments on the defendant's failure to present favorable evidence).

But when a constitutional error has been committed, "a reviewing court must analyze the error under Rule 44.2(a), reversing the judgment unless it can conclude beyond a reasonable doubt that the error did not contribute to the defendant's conviction or punishment." *Snowden*, 353 S.W.3d at 818. In conducting a harm analysis in this scenario, the reviewing court may consider "the nature of the error (e.g., erroneous admission or exclusion of evidence, objectionable jury argument, etc.), whether it was emphasized by the State, the probable implications of the error, and the weight the jury would likely have assigned to it in the course of its deliberations." *See id*. at 822. The timing of the comment is another factor to consider. *See Bustamante*, 48 S.W.3d at 766.

**B. Analysis**

Mayorga argues that he was denied a fair trial because of the trial court's allusion to his invocation of his Fifth Amendment rights. Mayorga complains mostly of the above-quoted conversation that occurred while questioning G.M.'s mother, which was in the

6

jury's presence, but Mayorga also complains of several discussions that occurred outside of the jury's presence. However, by their very nature, alleged allusions to a defendant's failure to testify that occur outside the jury's presence cannot be harmful because viewing the error from the "jury's viewpoint," the jury never heard the improper comment. *See Randolph*, 353 S.W.3d at 891; *Bustamante*, 48 S.W.3d at 764–65. And if the jury never heard the comment, the statement could not have contributed to the defendant's conviction. *See Snowden*, 353 S.W.3d at 818. Additionally, concerning the trial court's comments in front of the jury, there is no error because Mayorga testified at trial. *See Bustamante*, 48 S.W.3d at 766 (confirming that a judge's comment inquiring whether the defendant was going to testify "could not be considered by the jury as an allusion to a failure that did not occur because the defendant did not fail to testify").

Furthermore, even if there was any error, we conclude beyond a reasonable doubt that any such error did not contribute to Mayorga's conviction. *Snowden*, 353 S.W.3d at 818. First, we note that the State never emphasized the judge's brief allusion to the defendant's failure to testify. *Snowden*, 353 S.W.3d at 818. Also, the judge made the complained-of statements in the context of his duties under Rule 103(d) of the Texas Rules of Evidence. Under Rule 103, "the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means." TEX. R. EVID. 103(d). At the time the trial court made the comment, it was unsure if the defendant would exercise his Fifth Amendment right and so the trial court attempted to prevent Mayorga from introducing inadmissible evidence. Thus, the trial court's comments were not a direct comment on Mayorga's failure to testify; it was only an indirect and unclear reference made by the trial court in giving justification for preventing a line of questioning

7

it deemed inappropriate. *See Bustamante*, 48 S.W.3d at 764–65; *Jackson v. State*, 501 S.W.2d 660, 662 (Tex. Crim. App. 1973) (concluding there was no error because the State, at the time it made the allegedly improper comment, was unaware whether the defendant would testify or not and the comment was only an indirect allusion to the defendant's failure to testify).

Lastly, the evidence against Mayorga was substantial, if not overwhelming. The jury heard testimony that Mayorga began to sexually abuse G.M. when she was only six years old. The jury was presented with the nurse's report that G.M.'s hymen was torn in two places. Frausto averred that G.M. made an outcry statement to her about how Mayorga penetrated her vagina and her butt using his penis and his digits. The jury additionally heard that G.M. did not tell anyone originally because she was afraid that Mayorga would injure her mother. Therefore, in light of these factors, we are confident beyond a reasonable doubt that the trial court's comments made no contribution to the jury's determination that Mayorga was guilty. *Snowden*, 353 S.W.3d at 825. We overrule Mayorga's first issue.

### III. TRIAL COURT'S ABILITY TO LIMIT CROSS-EXAMINATION

**A. Standard of Review and Applicable Law**

We review a trial court's decision to limit cross-examination for an abuse of discretion. *Walker v. State*, 300 S.W.3d 836, 843 (Tex. App.—Fort Worth 2009, pet. ref'd). The trial court abuses its discretion when its decision goes beyond the zone of reasonable disagreement. *See id*.

Relevant evidence is generally admissible. *See* TEX. R. EVID. 402. Any possible bias or attack on the credibility of a witness is always relevant. *See Billodeau v. State,* 277

8

S.W.3d 34, 42–43 (Tex. Crim. App. 2009). Thus, trial courts should give defendants "great latitude to reveal any relevant facts that reflect on the credibility of the witness." *Walker*, 300 S.W.3d at 844; *see Johnson v. State*, 433 S.W.3d 546, 551 (Tex. Crim. App. 2014) ("[I]t is not within a trial court's discretion to prohibit a defendant from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness.") (internal quotations omitted). However, it is still within the trial court's authority to impose reasonable limits on cross-examination. *See Johnson*, 433 S.W.3d at 552; *Billodeau,* 277 S.W.3d at 42–43 ("[T]he defendant is entitled, *subject to reasonable restrictions*, to show any relevant fact that might tend to establish ill feeling, bias, motive, interest, or animus on the part of any witness testifying against him.") (emphasis added); *Walker*, 300 S.W.3d at 843 ("[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.") (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)). For example, a trial court may limit cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Walker*, 300 S.W.3d at 845 (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)).

**B. Analysis**

Mayorga argues that the trial court erred by restricting his ability to cross-examine G.M.'s mother. He asserts that the ability to fully question the mother on her bias, and thus attack her credibility, was crucial to his ability present his defense. However, the record indicates that the trial court gave Mayorga the opportunity to effectively cross-examine the mother. *See Walker*, 300 S.W.3d at 843.

9

As we will discuss in greater detail below, Mayorga's major defensive theory below was that the allegations were all fabricated by G.M.'s mother out of jealousy. As an attempt to show her bias and as an attempt to attack her credibility, Mayorga attempted to reveal that G.M.'s mother would allegedly jump on the front of Mayorga's vehicle to prevent him from leaving her. Even though the State objected to the line of questions as irrelevant, the State gave Mayorga leeway to demonstrate its relevance. *See Walker*, 300 S.W.3d at 845. The mother denied the allegations twice, but Mayorga persisted. The trial court only interjected once it appeared that Mayorga was attempting to impeach the mother with potentially inadmissible evidence. The trial court has a duty to prevent the jury from hearing inadmissible evidence. TEX. R. EVID. 103(d). The trial court limited Mayorga's cross-examination in no fashion other than precluding the introduction of inadmissible impeachment evidence. The trial court even emphasized to Mayorga that the mother would be available to recall as a witness during Mayorga's case-in-chief if he wanted to impeach her with admissible evidence. We see nothing to suggest that the trial court improperly impeded Mayorga's from engaging in "otherwise appropriate cross-examination." *Johnson*, 433 S.W.3d at 551. Mayorga was given sufficient opportunity to explore and reveal the mother's potential bias. *See Walker*, 300 S.W.3d at 845. We conclude that the trial court did not abuse its discretion in reasonably limiting Mayorga's cross-examination in this manner. *See id*. at 843. We overrule Mayorga's second issue.

## IV. SHIFTING THE BURDEN OF PROOF

### A. Standard of Review and Applicable Law

"The prosecution bears the burden of proving all elements of the offense charged, and must persuade the factfinder 'beyond a reasonable doubt' of the facts necessary to

10

establish each of those elements." *Niles v. State*, 555 S.W.3d 562, 569 (Tex. Crim. App. 2018). Accordingly, any attempt to shift the burden of proof to the defendant may constitute a violation of due process. *See Jackson v. State*, 17 S.W.3d 664, 674 (Tex. Crim. App. 2000); *see also Ki Chul Ha v. State*, No. 08-16-00161-CR, 2018 WL 3454906, at *5 (Tex. App.—El Paso July 18, 2018, no pet.) (mem. op., not designated for publication).

As discussed above, we will reverse the judgment when confronted with constitutional error unless we can conclude beyond a reasonable doubt that the error did not contribute to the defendant's conviction or punishment. *See Snowden*, 353 S.W.3d at 818.

## B. Analysis

Mayorga complains that the trial court and the prosecutor improperly shifted the burden of proof to him. We have already quoted the trial court's complained-of comments above; Mayorga complains that the trial court gave the impression that he had to present a defense and that his defense had to come from Mayorga himself. Concerning the prosecutor's alleged improper shifting of the burden of proof, the following exchange transpired, in front of the jury, as the State questioned G.M.s' mother:

| [State]: | Based on your conversation or based on what you understood at that time, did you believe that [G.M.] had been molested? |
|---|---|
| [Mayorga's Counsel]: | Your Honor, I'm going to object as to, one, relevancy. It has no bearing on the issue what she individually thought. |
| [State]: | Your Honor, this is absolutely part of their defense that they're raising, the theory of their defense. |
| [Mayorga's | |

11

Counsel]:    Judge, I—Judge, I'm going to object that that's—the fact that counsel is raising that is suggesting—he's shifting the burden to us which is in clear violation of my client's rights. To suggest that we're going to mount that defense or another defense or any defense, it's improper as, "This is their case-in-chief"; and now he's shifting the burden on us.

[State]:    I'm not shifting the burden, Your Honor. He is cross-examining in connection with this issue; and that's why I'm asking her if she—and as her parent, I'm allowed to elicit whether or not she believed her daughter.

[Court]:    Overruled as to her thought process.

The comments by the State were not an attempt to shift the burden of proof to Mayorga. During voir dire and pre-trial hearings and through cross-examination, Mayorga presented as part of his defensive theory that it is a fairly common scenario "[w]here a parent uses the kid to try and get another parent in trouble." Mayorga asserted that G.M.'s mother, "in a fit of jealousy," fabricated the allegations against Mayorga as an attempt to get him incarcerated for as long as possible. Mayorga ascribed the following motto to G.M.'s mother: "If I can't have [Mayorga], nobody can." In response to Mayorga's assertions that G.M.'s mother told G.M. to fabricate these allegations against Mayorga, the State was attempting to show that G.M.'s mother did not believe the allegations herself until the nurse reports came back, showing that G.M.'s hymen was torn. Thus, the State was merely responding to Mayorga's defensive theory. *See Jackson*, 17 S.W.3d at 674 (observing that the State did not improperly shift the burden of proof to the defendant by responding to defendant's assertion that the State's evidence was lacking). Also, the State never insinuated that Mayorga had to prove his innocence by providing evidence or witnesses. To the contrary, the State and the trial court both reiterated multiple times throughout the trial that Mayorga had no duty to prove anything because the State carried

12

the burden to prove its case beyond a reasonable doubt. The State's comments did not inappropriately shift the burden to Mayorga. *See Jackson*, 17 S.W.3d at 674; *Orellana*, 381 S.W.3d at 656.

Likewise, the comments by the trial court during the questioning of G.M.'s mother, which we quoted earlier, did not inappropriately shift the burden of proof to defendant. The trial court never stated that Mayorga was required to present any evidence to defend itself; rather, the trial court merely informed Mayorga that he could not impeach a witness with evidence that was not before the jury. In other words, the trial court was properly exercising its authority to prevent the jury from hearing inadmissible evidence. *See* TEX. R. EVID. 103(d). The trial court did not give the jury the impression that Mayorga had to present evidence, merely that if he chose to present evidence, he must do so in the proper manner. Therefore, we conclude the trial court did not improperly shift the burden to Mayorga. *See Jackson*, 17 S.W.3d at 674.

But, even if we assume that the State's and trial court's comments improperly shifted the burden of proof, we can still conclude beyond a reasonable doubt that any such error did not contribute to Mayorga's conviction. *See Snowden*, 353 S.W.3d at 818. The jury was instructed, both by the State and by the trial court, multiple times that the State bore the burden to prove Mayorga committed the alleged offenses beyond a reasonable doubt. We presume the jury listened to and heeded such statements from the court. *See Orellana*, 381 S.W.3d at 656 (citing *Gamboa v. State,* 296 S.W.3d 574, 580 (Tex. Crim. App. 2009)). Additionally, we have already concluded that the evidence against Mayorga was substantial, if not overwhelming. In light of the evidence before the jury and the instructions given by the trial court regarding the State's burden of proof, we

13

conclude beyond a reasonable doubt that even if there was any improper comment, it did not contribute to Mayorga's conviction. *See Snowden*, 353 S.W.3d at 818. We overrule Mayorga's third issue.

## V. Conclusion

We affirm the trial court's judgment.

NORA L. LONGORIA<br>
Justice

Do not publish.
Tex. R. App. P. 47.2(b).

Delivered and filed the
4th day of April, 2019.