

# NUMBER 13-21-00339-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

TERRENCE KENNETH WILLIAMS, Appellant,

v.

THE STATE OF TEXAS, Appellee.

## On appeal from the 277th District Court
## of Williamson County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Longoria and Tijerina
### Memorandum Opinion by Justice Longoria

Appellant Terrence Kenneth Williams was found guilty by a jury for the offense of aggravated robbery, a first-degree felony, and was sentenced to thirty-six years' imprisonment in the Correctional Institutions Division of the Texas Department of Criminal

Justice. *See* TEX. PENAL CODE ANN. §§ 12.32, 29.03. By one issue, Williams claims the trial court abused its discretion when it limited his cross-examination of a witness during the punishment phase of his trial. We affirm.[1]

## I.     BACKGROUND

On August 28, 2019, Christopher Lyman was working at the Georgetown Poker Club (poker club) in Georgetown, Texas. The poker club was located at a shopping center which contained multiple businesses, including Kelly-Moore Paints (Kelly-Moore). Artavious "Tavi" Lang drove to the poker club in his black Ford Explorer after Lyman arranged for Lang to sell illegal painkillers to a member of the poker club. Lang parked near the entrance to Kelly-Moore. Williams' white Chevrolet Malibu was also parked in the parking lot. At approximately 6:30 PM, Lyman walked towards Lang's vehicle, to tell him that he was parked on the wrong side of the building. At that time, Williams struck Lyman multiple times on the back of the head with a firearm. Williams told Lyman to "give it up" and "come off of it." Lyman emptied his pockets and threw $2,000 in hundred-dollar bills on the ground. Williams continued attacking Lyman, and a scuffle ensued in front of the entrance to Kelly-Moore, where Williams dropped his red iPhone. Williams continued striking Lyman's head with the gun until Lyman fell on a cactus planted in front of Kelly-Moore's entrance. While Lyman laid on the cactus, Williams pointed his gun at Lyman's stomach and took Lyman's cellphone. Thereafter, Williams headed back to the parking lot to collect the cash Lyman had thrown on the ground. Lyman followed Williams at a

---

[1] This case is before this Court on transfer from the Third Court of Appeals in Austin pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

distance. After Williams finished collecting the cash, he moved along the driver's side of Lang's vehicle, pointing his gun at Lyman, who was standing on the passenger side of Lang's vehicle. Lyman then ran around the building to the poker club. Lang and Williams, separately, drove away from the crime scene in their respective vehicles.

Lyman had an open bleeding gash on his head as a result of Williams's attack. Staples were applied to close the wound on Lyman's head when he was admitted to the hospital. The attack was witnessed by employees of Kelly-Moore. In addition, surveillance footage from Kelly-Moore and the poker club depicted the attack. During the trial, Williams admitted to serving two years in prison for a prior robbery in 2016 out of Travis County. Williams also admitted that he had two pending criminal cases for evading arrest on foot, and unlawful possession of a firearm. *See* TEX. PENAL CODE ANN. §§ 38.04, 46.04. Williams testified that Lyman owed him about $1,000 for previous drug transactions. Although Williams admitted to assaulting Lyman with the gun, he testified that he never intended to steal Lyman's cell phone or money.

The jury returned a verdict of guilty of aggravated robbery.

## II. PUNISHMENT PHASE

On August 3, 2020, the State orally requested a motion in limine in reference to Claudia Steese, a witness the State intended to call during the punishment phase. Steese had been shot in the leg by a firearm when two masked men robbed a Sonic restaurant in Travis County in 2016. In connection to this crime, Williams had been convicted for robbery and served two years in prison. At the time of the State's limine request, Steese was incarcerated for a pending felony charge of sexual assault of a child from 2020. The

State requested in its motion that the parties, in reference to Steese, refrain from eliciting testimony about anything other than the fact that Steese was charged with a felony; the State specifically asked that the parties not elicit testimony about the nature of Steese's felony charge, or any of the underlying facts of said charge.

Initially, the trial court ruled that Williams could go into the nature of the offense, but not the underlying facts. However, on August 4, 2020, the trial court modified its prior ruling and held that the parties could not elicit testimony regarding the nature of Steese's felony charge or the underlying facts. Williams objected and argued that prohibiting testimony of the nature of the offense was a violation of his constitutional rights, his right to confront witnesses, and his right to a fair trial. The trial court overruled Williams's objections. On the same day, Williams pleaded true to the enhancement paragraph of the indictment alleging that Williams had been finally convicted of the felony offense of robbery on March 14, 2018, in Cause No. D-1-DC-16301793 of the 403rd District Court of Travis County, Texas; the trial court admitted the judgment of conviction for this and the State published it to the jury.

Steese testified that she had a pending felony charge and had made no deals or offers with the District Attorney's office in exchange for her testimony. Steese also testified as to the circumstances regarding the 2016 robbery at Sonic, the crime Williams had been convicted of in 2018. Specifically, Steese testified that on September 13, 2016, she worked at a Sonic restaurant in Austin, Texas. Just after the restaurant closed to customers for the night, Steese saw two African-American individuals wearing hoodies and bandanas tied around their faces in the building, one of which had a firearm. During

4

the course of the armed robbery, Steese was shot in the leg. After the assailants left, Steese was transported to the hospital. Steese later had an operation to remove the bullet and could not walk for three to four months after being shot. Steese required a walker, crutches, and physical therapy. Steese further testified as to the mental and emotional toll the robbery had taken on her. After other evidence was presented, the jury sentenced Williams to thirty-five years' in prison for the aggravated robbery of Lyman. This appeal followed.

### III.     STANDARD OF REVIEW & APPLICABLE LAW

In his sole issue, Williams contends that the trial court improperly limited his right to confrontation and cross-examination by prohibiting him from eliciting testimony from Steese as to what specific felony charge she was incarcerated for at the time of her testimony.

The Confrontation Clause of the Sixth Amendment provides a right in both federal and state prosecutions to confront and cross-examine adverse witnesses. *See* U.S. CONST. amends. VI, XIV; *Pointer v. Texas*, 380 U.S. 400, 406 (1965); *Woodall v. State*, 336 S.W.3d 634, 641 (Tex. Crim. App. 2011). "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination," because that is "the principal means by which the believability of a witness and the truth of his testimony are tested." *Johnson v. State*, 433 S.W.3d 546, 551 (Tex. Crim. App. 2014) (quoting *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974)). However, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense

5

might wish." *Woodall*, 336 S.W.3d at 643 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 19 (1985)). The "'Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose [forgetfulness, confusion, or evasion] through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony.'" *Id.* (quoting *Fensterer*, 474 U.S. at 21–22). A defendant must "be permitted to explore any plausible basis for witness bias, whether or not the witness is willing to admit to it." *Jones v. State*, 571 S.W.3d 764, 769 (Tex. Crim. App. 2019). But cross-examination for bias is admissible by operation of the Confrontation Clause only when the cross-examination topic bears a "logical relationship" or "causal connection" to the witness's potential bias. *See id.* at 769–70.

The scope of cross-examination, including what evidence may be admitted through cross-examination, is generally committed to the trial court's discretion. *See Johnson v. State*, 490 S.W.3d 895, 908–10 (Tex. Crim. App. 2016); *Carroll v. State*, 916 S.W.2d 494, 497–98 (Tex. Crim. App. 1996). Trial judges retain "wide latitude" under the Confrontation Clause to impose restrictions on cross-examination based on such criteria as "harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant." *Johnson*, 490 S.W.3d at 910 (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000); *Castle v. State*, 748 S.W.3d 230, 233 (Tex. Crim. App. 1988) ("Generally, the scope of cross-examination is within the control of the trial court and in the exercise of its own discretion")). But the trial court has no discretion to limit cross-examination so much that the court prevents the defendant from eliciting matters required to be admissible by

6

the Confrontation Clause. *See Johnson*, 490 S.W.3d at 908–10, 913; *Carroll*, 916 S.W.2d at 497–98, 501.

## IV. DISCUSSION

During the punishment phase, Steese admitted to having a pending felony charge and testified she had made no deals with the District Attorney's office in exchange for her testimony. While Williams was prohibited from eliciting testimony regarding the specific "nature" of Steese's alleged felony offense or its underlying facts,[2] the trial court nevertheless enabled Williams "full and fair opportunity to probe and expose" Steese, through cross-examination, about whether her pending felony charge may have colored her testimony. *See Woodall*, 336 S.W.3d at 643. The record is clear that Williams only cross-examined Steese regarding her lack of knowledge as to who shot her during the robbery: Williams or the other assailant. Williams did not cross-examine Steese regarding her potential bias as someone with a pending felony charge despite having the opportunity to do so within the limitations imposed by the trial court.

With respect to the "nature" of Steese's alleged offense, Williams has not shown any logical connection between the prohibited subject matter and the potential bias alleged. *See Jones*, 571 S.W.3d at 769–70; *Johnson*, 433 S.W.3d at 544. "The fact that a witness stands accused of (for example) 'felony theft' would not, if presented to the jury, make that witness seem any more prone to testifying favorably for the State than a similarly situated witness who stood accused only of some unspecified 'felony.'" *Johnson*,

---

[2] Williams does not complain on appeal regarding the trial court's prohibition on cross-examining Steese with the *underlying facts* of her pending sexual assault of a child charge.

7

433 S.W.3d at 554. "Both hypothetical witnesses—the one accused of 'felony theft' and the other accused of the unspecified 'felony'—would stand in the same vulnerable relation to the State; other things being equal, they would be subject to the same risk and extent of punishment." *Id.* In other words, had the jury been presented with the fact that Steese's pending felony charge was actually a "sexual assault of a child" charge, it would have had no incrementally greater capacity to evaluate her potential for bias—its perception of the witness's vulnerable relationship with the State would be essentially the same as before. *See id.*

Williams has not demonstrated the relevancy of the "nature" of Steese's pending felony charge to support the allegation of bias. Even if the trial court's limitation could have arguably rendered cross-examination marginally less effective than it otherwise might have been, a "less than optimal" opportunity for cross-examination does not, in itself, violate the Sixth Amendment. *Id.* at 557. Here, the trial court's limitation did not so deprive Williams of an important avenue of examining Steese for bias as to leave his overall opportunity for cross-examination ineffective. *See Johnson*, 490 S.W.3d at 908–10, 913 (holding that the trial court has no discretion to limit cross-examination so much that the court prevents the defendant from eliciting matters required to be admissible by the Confrontation Clause); *Carroll*, 916 S.W.2d at 497-98, 501. Thus, the trial court did not violate Williams's right to confront the witnesses against him by preventing him from eliciting testimony regarding the precise "nature" of Steese's alleged felony charge.

Accordingly, the trial court did not abuse its discretion. Williams's sole issue is overruled.

## V. CONCLUSION

We affirm the trial court's judgment.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
25th day of August, 2022.