

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

## No. 02-18-00517-CR

———————————————

MARCELINO RAMOS PABON, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 432nd District Court
Tarrant County, Texas
Trial Court No. 1465860D

---

Before Sudderth, C.J.; Gabriel and Bassel, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. Introduction

Appellant Marcelino Ramos Pabon appeals his convictions on four counts of aggravated sexual assault of a child under fourteen years old, one count of indecency with a child by contact, and one count of indecency with a child by exposure. *See* Tex. Penal Code Ann. §§ 21.11(a), 22.021(a)(1)(B), (2)(B). In three issues, Pabon challenges the trial court's admission of extraneous-bad-act evidence (Issue 1), the trial court's exclusion of the complainant's testimony about her immigration status at the time of the outcry and her later obtaining a U-Visa based on her allegations against him (Issue 3), and the trial court's overruling of his shifting-the-burden objection to the State's closing argument (Issue 2). Because Pabon forfeited some of his complaints and the trial court did not otherwise reversibly err, we affirm the trial court's judgment.[1]

## II. Admission of Evidence of Pabon's Extraneous Bad Acts

In his first issue, Pabon complains that the admission of extraneous-bad-act testimony during the guilt-innocence phase constitutes reversible error. The State argues that Pabon did not preserve this issue. We agree with the State.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds, if not

---

[1]Pabon does not challenge the sufficiency of the evidence to support his convictions. We therefore omit an initial factual background.

2

apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016). Further, the party must obtain an express or implicit adverse trial-court ruling or object to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Everitt v. State*, 407 S.W.3d 259, 262–63 (Tex. Crim. App. 2013); *Martinez v. State*, 17 S.W.3d 677, 686 (Tex. Crim. App. 2000).

Before trial, Pabon objected to the introduction of the testimony of two "extraneous victims"—his daughter and her friend—on several grounds but did not mention "Rule 403" or allege that the extraneous-bad-act evidence's "probative value [was] substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. The trial court clarified, "You're making all these objections under 405, 402, 404, 401," gave Pabon ample opportunity to further object, and stated for the record, "The Court has also conducted a balancing test under 403 and reached the conclusion it will be admissible because it is . . . very probative under . . . 38.37." Pabon did not object to the results of that balancing test. Further, Pabon does not provide a record reference to a Rule 403 trial objection to the extraneous-bad-act testimony in his brief, and our review of the record does not indicate that Pabon objected under Rule 403 when his daughter and her friend testified during the guilt-innocence phase of the trial. We therefore hold that Pabon forfeited his first issue.

### III. Limitations on Pabon's Cross-Examination and Exclusion of Evidence About the Complainant's U-Visa

In his third issue, Pabon complains that the trial court's refusal to allow him to question the complainant in the jury's presence about her immigration status and her receiving a U-Visa based on her allegations against him "irreparably deprived" him of his right to impeach and confront her. The State argues that Pabon did not preserve this issue. We agree with the State in part.

The evidence shows that in January 2005, the then six-year-old complainant and her mother arrived in the United States from Honduras and moved in with Pabon, who was engaged to the complainant's aunt. The complainant made an outcry of sexual abuse against Pabon in June 2005, when she was seven years old. The police and Child Protective Services (CPS) were contacted, and CPS interviewed the complainant a day after the outcry. The CPS investigator warned the detective in charge of the investigation that the complainant and her mother would be returning to Honduras "within a certain period of time." The complainant soon saw a sexual abuse nurse examiner with the CARE Team at Cook Children's Hospital, and a written report from that examination was placed in the detective's police file. Nothing happened on the case for several years.

In 2016, an internal audit in the Fort Worth Police Department revealed that the original investigating officer had failed to diligently investigate more than a thousand cases, including this one. The new investigating officer, Detective Pat

Henz, reviewed the file and spoke to witnesses, including the complainant, who by 2016 was eighteen years old. After reinvestigating the facts, Detective Henz obtained two arrest warrants for Pabon, and Pabon was arrested on those warrants.

In a voir dire hearing requested by Pabon, the parties explored the circumstances of the complainant's receiving a U-Visa and becoming a permanent resident in the intervening years between her 2005 outcry and the 2016 reinvestigation of her allegations against Pabon. Pabon wanted to discuss these matters before the jury to show the complainant's motive, based on her obtaining her U-Visa and then permanent residency as a result of her "complaint in this matter."

The complainant testified at the hearing that she did not realize that she and her mother were undocumented when they came to the United States, but they were captured by ICE agents when they crossed the river, so she knew something was wrong. In 2009, when the complainant was ten or eleven years old, she and her mother visited the Human Rights Initiative for advice on how an uncle who had recently come to the United States could remain in this county. In that visit, the complainant learned that she was eligible for a U-Visa based on her allegations against Pabon. The organization's lawyers advised her that to obtain the U-Visa, she needed "to go ahead and try [to] file a [police] report again" because the case against Pabon was not closed, so she and her family did so in 2009. The complainant admitted that she was advised to cooperate to get her U-Visa, but she testified that she did not understand when she received it that she could lose it if she did not cooperate with

law enforcement;[2] that she did not then "know exactly what was going on"—she just "did what [she] was told to do"; and that none of her statements to police or prosecutors were motivated by fear of deportation. She also testified that she had been a permanent resident since 2014, two years before the investigation reopened. The trial court stated,

> [B]ased upon what I've heard, her motivation to go to the human rights initiative was on the basis that they were trying to help an uncle. Their primary motivation was that.
>
> Now, there may have been ancillary things discussed, but that's not what's clear from the record. Now, I understand that you're making an argument, and I apologize for interrupting. You may continue.

After the trial court's statement, Pabon's defense counsel argued,

> So I would say that it is relevant as to motive. It is a defensive theory that is allowed to be argued and presented to the jury. And I believe that not allowing us to pursue the theory of motive is reversible error because of the fact that it goes straight to the theory that the reason she wanted to continue and pursue this offense is to obtain the U[-V]isa, to obtain residency and ultimately citizenship.

The court found that the complainant "indicated" that when she reported the sexual abuse at the age of seven, "she had no knowledge of immigration issues. That was not her motive to make a complaint at all." The trial court and defense counsel engaged in more dialogue, and ultimately the trial court ruled that the defense could

---

[2]One requirement for obtaining a U-Visa is that a complainant "must assist law enforcement in the investigation or prosecution of the crime." Diane Mickelson, Comment, *When the Problem Is the Solution: Evaluating the Intersection Between the U Visa "Helpfulness" Requirement and No-Drop Prosecution Policies*, 53 U. Rich. L. Rev. 1455, 1465 (2019); *see also* 8 U.S.C. § 1101(a)(15)(U)(i)(III); 8 C.F.R. § 245.24.

not explore the topic in the jury's presence absent "direct evidence" of motive: "The purpose of this cross-examination is to impeach. A seven-year-old child does not have the motivation that you are urging." Defense counsel attempted to argue after the ruling and restated the ruling but did not further object to the ruling.

Pabon did not raise any explicit Sixth Amendment or Confrontation Clause complaints in the trial court regarding the U-Visa line of inquiry; we therefore overrule his Confrontation Clause complaints as forfeited. *See* Tex. R. App. P. 33.1(a)(1); *Golliday v. State*, 560 S.W.3d 664, 670–71 (Tex. Crim. App. 2018).

Whether Pabon preserved his impeachment complaint under the rules of evidence—as opposed to the Confrontation Clause—is a closer question. To preserve error when a trial court excludes evidence, a party must show the substance of the excluded evidence by offer of proof unless the substance is apparent from the context of the questions asked. Tex. R. App. P. 33.2; Tex. R. Evid. 103(a)(2); *Holmes v. State*, 323 S.W.3d 163, 168 (Tex. Crim. App. 2009). A party may make an offer of proof in question-and-answer form or in the form of a concise statement by counsel. Tex. R. Evid. 103(b); *Holmes*, 323 S.W.3d at 168.

Pabon questioned the complainant outside the jury's presence about the circumstances of her obtaining a U-Visa. He stated that he wanted to question her in the jury's presence to show that she had motive to pursue her claim against him to get a U-Visa and argued that barring him from presenting that defensive theory would be reversible error. The trial court found that the complainant did not know anything

7

about a U-Visa when she reported the sexual abuse at seven years old. The trial court excluded the evidence presented in the voir dire hearing and held that Pabon could not pursue that line of questioning absent direct evidence. The trial court's statements on the record show that it understood that Pabon wanted to impeach the complainant with the U-Visa evidence. We will therefore reach the merits of Pabon's evidentiary impeachment issue.

We review the exclusion of evidence for an abuse of discretion, which the record shows only when the ruling falls outside the zone of reasonableness. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016); *Merrick v. State*, 567 S.W.3d 359, 375 (Tex. App.—Fort Worth 2018, pet. ref'd). As the Texas Court of Criminal Appeals has explained,

> The Texas Rules of Evidence permit the defendant to cross-examine a witness for his purported bias, interest, and motive without undue limitation or arbitrary prohibition. Rule 404(b) permits the defense, as well as the prosecution, to offer evidence of other acts of misconduct to establish a person's motive for performing some act—such as making a false allegation against the defendant. Rule 613(b) permits a witness to be cross-examined on specific instances of conduct when they may establish his specific bias, self-interest, or motive for testifying.

*Johnson v. State*, 490 S.W.3d 895, 910 (Tex. Crim. App. 2016). Generally, limiting a defendant's right to cross-examine a witness is within a trial court's discretion. *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009). For impeachment evidence to be admissible, the defendant needs to establish a "causal connection or logical relationship" between the evidence and the witness's alleged bias or motive.

8

*Johnson v. State*, 433 S.W.3d 546, 552 (Tex. Crim. App. 2014); *Tristan v. State*, 393 S.W.3d 806, 810–11 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

The excluded evidence could certainly be admissible in a different factual scenario, but as the trial court pointed out, the timing of the events controls its admissibility here. Pabon did not offer any evidence before the jury or trial court that in 2005, getting a U-Visa was on the then seven-year-old complainant's radar when she told Pabon's relatives, the police, CPS, and the CARE team nurse about the sexual abuse Pabon had subjected her to. Moreover, while the complainant was motivated by the legal advice she received regarding obtaining a U-Visa to *refile* a police report of her allegations in 2009 after the case had stalled for several years, she obtained her permanent residency in 2014. She therefore was not subject to the U-Visa requirement that she cooperate with law enforcement or risk deportation either in 2016 when the criminal case was reinvestigated and Pabon was arrested or in 2018 when she testified at trial. Thus, Pabon did not show any logical connection between the excluded evidence and the complainant's motive to lie about his conduct. *See Johnson*, 433 S.W.3d at 552; *Tristan*, 393 S.W.3d at 810–11. Consequently, the trial court did not abuse its discretion by excluding the evidence or cutting off Pabon's inquiry until direct evidence of the complainant's motive was offered.[3] *See Garcia v.*

---

[3]We recognize that the Texas Court of Criminal Appeals has cautioned that the requirement imposed by case law that a proponent show a "causal connection" or "logical relationship" between the proposed impeachment evidence and a witness's "potential bias or prejudice" "cannot be applied too rigorously" because it "would

9

undermine [the] constitutional mandate—and Rule 613(b)'s implicit assumption—that a defendant be permitted to explore any *plausible* basis for witness bias, whether or not the witness is willing to admit to it." *Jones v. State*, 571 S.W.3d 765, 769 (Tex. Crim. App. 2019) (emphasis added). Here, however, Pabon did not invoke either the state or federal constitution in the trial court. Moreover, the voir dire inquiry demonstrated to the trial court that a desire for a U-Visa was not a *plausible* basis for the seven-year-old complainant to accuse Pabon of sexually abusing her when the only evidence showed that she did not know what a U-Visa was until more than three years after her outcry, nor, because she became a permanent resident in 2014, was the U-Visa a *plausible* basis for her to cooperate in the 2016 reinvestigation of her complaint against Pabon or for her to testify in 2018. Given the absence of evidence of *any* connection between the seven-year-old complainant's outcry and her learning of, applying for, and receiving a U-Visa years later, we cannot conclude that the trial judge abused his discretion by excluding evidence of the U-Visa and cutting off the inquiry until and unless Pabon could offer evidence of such a connection.

But even if we were to assume that the trial judge did abuse his discretion by excluding the U-Visa evidence and prohibiting the line of questioning, any cross-examination of the complainant about the U-Visa "would[, if anything,] only marginally have increased the damage already inflicted upon her general credibility by other evidence," *id.* at 771–72, such as the evidence that (1) years after her 2005 outcry against Pabon, she accused her uncle of sexual abuse but later recanted, only to admit in Pabon's trial that her recanting itself was a lie and (2) she continued to spend time with Pabon, even without her mother, after the 2005 outcry until 2015, the year before the complaint was reinvestigated and he was arrested. *See id.* at 770–71 (holding in assault–family violence case that trial court committed constitutional error by prohibiting defendant from asking complainant's mother (Grandma) about her knowledge and interest in pending State-filed termination case regarding defendant's and complainant's parental rights to their daughter but that error was harmless given the "subtle difference" between defendant's and Grandma's accounts of complainant's conduct, the investigating officer's testimony that conflicted with Grandma's statement that defendant "ransacked the house" after assaulting complainant, and the fact that the jury knew that Grandma was complainant's mother and the child's grandmother); *Escobedo v. State*, No. 04-18-00712-CR, 2019 WL 2518165, at *5 (Tex. App.—San Antonio June 19, 2019, no pet.) (mem. op., not designated for publication) (assuming trial court abused its discretion by barring defendant in assault case (Grandma) from questioning complainant about Grandma's intervention in custody suit for complainant's son, who was also Grandma's grandson, but holding the error harmless when the jury heard that the two women did not get along, that Grandma had reported complainant to CPS, and that Grandma

*State*, No. 13-17-00218-CR, 2019 WL 1388532, at \*6 (Tex. App.—Corpus Christi–Edinburg Mar. 28, 2019, pet. ref'd) ("Garcia's assertion that the family plotted against him so that D.C.'s father could obtain a U[-V]isa is not supported by any evidence and [is] only supported by hypothetical assertion."). *But see Sansom v. State*, 292 S.W.3d 112, 120–21 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (holding trial court harmlessly erred by barring defendant from questioning estranged wife about her United States citizenship status to show the motive of her daughters (the complainants) to lie when the defensive theory was premised in part on the wife's status and the timing of the criminal allegations in relation to a telephone conversation between defendant and his wife about getting a divorce and defendant had told the police that one of the complainants had threatened to "call the police and tell them [he] touched [her] middle part" if he divorced his wife).

Even if the trial court had erred, such error would be harmless. *See* Tex. R. App. P. 44.2(b). An eyewitness—Pabon's grandson—corroborated the complainant's outcry both at the time of the outcry and during the trial held more than a decade later, the jury heard two other women testify that Pabon sexually abused them when they were minors, and Pabon otherwise attacked the complainant's credibility by

had custody of grandson under CPS's safety plan for six months before assault—"especially" because "the assault had been reported to the police and the photographs of [complainant's] injuries had been taken . . . months before [Grandma's] intervention in the custody suit").

11

discussing her reporting another man for sexual abuse and her recanting that accusation. We therefore overrule Pabon's third issue.

## IV. Closing Argument

In his second issue, Pabon complains that in the State's final closing argument, "[t]he prosecutor's allusion to a lack of defense witnesses improperly shifted the burden of proof and constitutes reversible error." Within his discussion of the issue, Pabon also argues that the challenged statement alludes to his failure to testify. The State contends that Pabon failed to preserve error. We agree with the State in part.

In Pabon's closing argument, defense counsel discussed evidence not presented to the jury: testimony of the complainant's mother, other men who were in the complainant's life when she was sexually abused, Pabon's ex-wife, the detective who originally investigated the allegations, and a forensic interviewer to whom the complainant recanted her allegations of sexual abuse by a different man; testimony about why the complainant and her mother never returned to Honduras; and the video of the complainant's CPS interview recorded after she made allegations against Pabon. The following transpired during the prosecutor's final closing argument:

| [PROSECUTOR:] | You know, after doing this for so long, one thing I've learned is I know exactly how obvious someone's guilt is when a Defense attorney spends his closing argument talking about what you didn't hear. |
| --- | --- |
| [DEF. COUNSEL]: | Objection, Your Honor; sidebar. |
| THE COURT: | Sustained. |

| | |
|---|---|
| [DEF. COUNSEL]: | Ask the jury to disregard the sidebar. |
| THE COURT: | Disregard the last comment. |
| [PROSECUTOR]: | Defense attorney sat up here and talked to you about the witnesses you didn't hear from. But he didn't say anything about the evidence you did hear, because that evidence is so overwhelmingly showing this defendant is guilty, he doesn't want you to think about that. |
| | And make no mistake about the fact they called their witness. And that is an example of how they have got every opportunity to call whoever they want, however they want. |
| [DEF. COUNSEL]: | Objection, Your Honor; shifting the burden. |
| THE COURT: | Overruled. |
| [PROSECUTOR]: | He said why didn't we. Why didn't they? Look, if that CPS video is admissible as evidence and we could have brought it, why didn't they? Despite the fact that you're not to consider yourselves whether it's admissible or not, it's a red herring, just like arguing what you didn't hear rather than what you did hear. |

Pabon did not object that the prosecutor alluded to his failure to testify in his own defense. Absent an objection to jury argument, nothing is presented for review. *Threadgill v. State*, 146 S.W.3d 654, 667 (Tex. Crim. App. 2004); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *see also* Tex. R. App. P. 33.1(a). Consequently, he did not preserve that part of his complaint. However, he did

13

preserve his complaint that the State's argument impermissibly shifted the burden of proof. We therefore address it.

We review a trial court's ruling on an objection to improper jury argument for an abuse of discretion. *Rodriguez v. State*, 446 S.W.3d 520, 536 (Tex. App.—San Antonio 2014, no pet.) (op. on reh'g); *Whitney v. State*, 396 S.W.3d 696, 705 (Tex. App.—Fort Worth 2013, pet. ref'd). To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to opposing counsel's argument; or (4) plea for law enforcement. *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011); *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim. App. 1992). Based on our review of the entire closing argument, we hold that the prosecutor was responding to defense counsel's argument discussing the witnesses and evidence that the State had not offered in the jury's presence. Such a response is permissible. *See Freeman*, 340 S.W.3d at 727; *Felder*, 848 S.W.2d at 94–95; *Allen v. State*, 693 S.W.2d 380, 385 (Tex. Crim. App. 1984) ("Clearly the defense attorney was implying to the jury that the State had some evidence—either the stereo itself or fingerprints taken off the stereo—that it was keeping from the jury. The State's argument was merely a response to defense counsel's argument and no more."). We therefore hold that the trial court did not abuse its discretion by overruling Pabon's objection, and we overrule his second issue.

14

## V.  Conclusion

Having held that Pabon forfeited his first issue and portions of his second and third issues and having overruled the remainder of his second and third issues on the merits, we affirm the trial court's judgment.

/s/ Dabney Bassel
Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  August 29, 2019